H. B. ANDREWS AND OTHERS v. JOHN MARSHALL AND OTHERS.

See this case for a charge held to be calculated to mislead the jury, and, therefore, erroneous, in consequence of the assumption of evidence in the charge, from which the jury might naturally infer the court to be of opinion that the evidence was sufficient to establish an actual possession by the defendant of the land in controversy, which was the main fact at issue.

An instrument executed in 1834, with all the formalities then requisite to constitute it a public or authentic act, is admissible in evidence without proof of its execution; and a copy of such an instrument, duly certified by the clerk who was the lawful custodian of the original, is likewise admissible without proof of the execution of the original.

By the laws of Coahuila and Texas in force in 1834, the signature of the officer before whom such an instrument was executed, though not material to its validity, was essential to its character as a public or authentic act, capable of making proof of itself without extrinsic evidence; and in the absence of the officer's signature, the instrument cannot be considered an authentic act.

If it be shown, however, that the officer kept the originals in a volume for the year, and placed his signature at the end of the volume, this, it seems, would suffice to authenticate the originals as public acts.

But in the absence of such proof and of the signature of the officer, the instrument can only be regarded as a private act, the execution of which must be proved in order to make it admissible in evidence.

APPEAL from Bell. Tried below before the Hon. R. E. B. Baylor.

This suit was originally instituted on the 30th of December, 1852, by H. B. Andrews and Charles D. Sayre against some twenty several defendants, to try the title to and recover possession of eleven leagues of land in Bell county, originally conceded by the State of Coahuila and Texas to Maximo Moreno, under whom Andrews and Sayre derived title to an undivided half interest.

In December, 1856, Piety Hadley and her husband, T. B. J. Hadley, and Benjamin J. Smith, intervened in the suit, setting up title to the other undivided half interest under the Moreno grant, and they became co-plaintiffs with Andrews and Sayre.

Pending the litigation, compromises were effected between the

Andrews v. Marshall.

plaintiffs and all the defendants, except Michael Reed, who claimed one league of the land sued for, setting up title thereto as his headright. His title originated subsequently to the grant to Moreno, under whom the plaintiffs derived title, and the defence upon which he chiefly relied was the statutes of limitations of three and five years.

Reed proved that he settled upon the league in controversy as his headright in 1835, built a dwelling and other improvements, and made a crop. But before the expiration of a year he and the other settlers in that section of the country were driven away and forced into the interior settlements by the hostile Indians. That on thus being driven from his home, he had left his heavy furniture, and at all times thereafter continued openly to claim the league as his headright, and to express his determination to return to and live upon it as soon as the condition of the country would permit. That in 1845, which was as early as it was considered at all safe from Indians, he did return; but, instead of settling on the league, built his houses and opened his farm upon an adjoining labor, which was also part of his headright, but was held by a different patent. He continued, however, to claim the league, exercising over it constant acts of ownership, such as cutting and carrying away timber, pasturing his stock, building pens for them on the league, keeping constant communication with it by a ferry across Little river when the stream was not fordable; all of which acts, it was contended, established a resumption of actual possession by Reed, which, by relation, should be held a continuation of his original possession in 1835.

The eighth instruction given by the court below, at the instance of the defendant, and held to be erroneous in the opinion, is as follows: " An adverse possession of land is an actual, visible, exclusive and notorious appropriation of land, commenced and continued under a claim of right—in other words, it is the intention to claim title which makes the possession adverse. In order for the defendant to hold such possession, it is not necessary for him to actually reside upon the land, but such possession may be held by the defendant's exercising such continued, open and notorious acts of ownership over the land they claim as would give

the plaintiffs a right of action for the possession of the land against them, and such as would give general publicity to their claim— such as keeping pens and herding stock on the land, and cutting and carrying away all such timber from the land as the defendant needed for making and keeping up his houses and fences on his farm adjacent to said land; and otherwise using said land openly and notoriously as his own, as his ordinary necessities required or inclination prompted."

The act of sale from Josiah T. Harrell to R. M. Williamson for the use of Benjamin Fort Smith, of January 7th, 1834, was one of the links in the chain of title by which the plaintiffs, Hadley and B. J. Smith, as devisees of Benjamin Fort Smith, claimed title to the land in controversy. This instrument was executed before Williamson himself as only constitutional alcalde of the town of San Felipe de Austin, and bore the signature of the grantor, Harrell, and those of several witnesses, but not that of Williamson, before whom, as alcalde, it was made. A copy of this instrument, certified by the clerk of the County Court of Austin county, as the keeper of the records of that county, including those of Williamson as alcalde, was admitted in evidence by the court below.

This cause came to trial at the Spring Term, 1857, when there was verdict and judgment for the defendant, Reed, as against the plaintiffs, Andrews and Sayre, and for the plaintiffs, Hadley and Smith, against Reed. The cases of the plaintiffs, Hadley and Smith, were distinguished from those of Andrews and Sayre by the disability of coverture upon the part of Piety Hadley, and of infancy on that of B. J. Smith.

Appeals were taken by Andrews and Sayre from the judgment against them in favor of Reed; and by Reed from the judgment against him in favor of the plaintiffs, Hadley and Smith.

*W. S. Oldham* for Andrews, Sayre, B. J. Smith and the Hadleys.

*Sayles & Bassett* and *McFarland* for Reed.

Andrews v. Marshall.

WHEELER, C. J. The appeal of the plaintiffs, Andrews and Sayre, brings in question the rulings of the court and the finding of the jury on the defence of the statute of limitations. To make out this defence, it devolved on the defendant to show an adverse possession of the league of land in controversy, after his return to the neighborhood and settlement upon his labor in 1845. His settlement upon the league in 1835, which was relinquished in less than a year thereafter, could not avail him anything in any view of the law, unless he afterwards resumed the possession of the league. On his return to the country he did not settle upon the league; his settlement and improvements were wholly upon his labor, and the acts relied on as constituting possession of the league were cutting and carrying away timber for his improvements upon his labor, building pens for penning his stock, hogs, &c., and pasturing them upon the league, to which, however, they were not confined by any enclosure, but ranged at large. These acts considered severally, the court instructed the jury, at the instance of the plaintiff, did not constitute an adverse possession; but by the 8th instruction, given at the instance of the defendant, they are collectively made, in effect, to constitute such possession. The charge, moreover, assumes that there was evidence from which the jury might find not only the acts of possession enumerated, but that possession was held by the defendant by "otherwise using said land openly and notoriously as his own." At least the jury might very naturally infer from the language of the charge that such was the opinion of the court. The charge, as a whole, puts the case, we think, too strongly for the defendant, and considered in reference to the evidence was calculated to mislead. What will constitute a possession sufficient to bear a recovery under the 15th section of the statute has been heretofore considered by this court, and need not be here discussed. (Wheeler v. Moody, 9 Texas R., 372.)

As applied to the evidence, we think the charge of the court was erroneous, and the judgment as to these plaintiffs must be reversed.

The defendant's appeal brings in question several rulings of the court, but one of which it becomes necessary to revise. That is

the admission in evidence of the act of sale by Harrell to Williamson for the use of Smith, of the 7th of January, 1834, without proof of its execution. If the instrument was properly executed with all the requisite formalities to constitute it a public or authentic act, the copy was rightly admitted upon the certificate of the clerk who was the lawful custodian of the original, because the original would have been admissible without proof of its execution. (O. & W. Dig., art. 470; York v. Gregg, 9 Tex., 85.) It was wanting the signature of the officer before whom it was executed. This, according to the case of Titus v. Kimbro, (8 Tex. R., 210,) did not affect the validity of the instrument; but it does seem to have been essential to constitute it an authentic act, capable of making proof of itself. The signature of the notary, it is said, is that which gives an instrument executed before him its character as a public instrument, and it cannot be considered authentic without it. If it were shown that the notary kept the originals in a volume for the year, and signed at the end of the volume, this it seems would be sufficient. (Escriche, verbo Instrumento Publico; also, verbo Escribano.)

But without such proof, each instrument ought to bear the signature of the notary. "Covenants made before a notary public carry along with them the proof of their truth by the signature of the notary." (1 Domat, tit. 1, sec. 1, p. 144; and see 1 Partidas, part 3, tit. 18, law 54.)

Wanting the signature of the officer, though valid as a private instrument, it was not an authentic act capable of making proof by its mere production. Its execution must have been proved like any other private instrument, and it was error to admit it in evidence without such proof. The consequence is that the judgment must be wholly reversed.

Upon the question which has been mainly discussed in this case— that is, whether the plaintiffs, appearing to be tenants in common with persons not joined in the action, shall have judgment and a writ of possession for their undivided interest, leaving the defendant's possession undisturbed as to the residue, or shall recover the whole, as well for their co-tenants as themselves, and have a writ of possession to turn the defendant out, as it does not become

necessary for the present disposition of the case, we do not think proper to express an opinion. In view of the importance and difficulty of the question, and the conflict of authorities, we think it better to reserve that question until its decision shall become necessary.

Reversed and remanded.