## Juliana de las Fuentes et al. v. C. M. McDonald.

### No. 6846.

**1. Power of District Clerks to take Probate of Wills in 1875.**
The Act of June 2, 1873 (Paschal's Digest, article 5462a), "prescribing the mode of proceeding in District Courts in matters of probate," provided that the clerks of such courts should have power (among other things) "to probate wills * * * when there is no contest." Section 9, article 5, of the Constitution of 1869, provides, that "the said clerks shall exercise such powers and perform such duties appertaining to the estates of deceased persons * * * in vacation, as may be prescribed by law; provided, that all contested issues of law and fact shall be determined by the District Court." Under these laws, a will admitted to probate in January, 1875, by the clerk of the District Court having jurisdiction over the estate, was duly probated. This power is not affected by section 7 of article 5 of the Constitution.

**2. Adverse Possession.—** The mere occupancy of land by grazing live-stock upon it, without substantial enclosures or other permanent improvements, is not sufficient to support a plea of limitation under our statutes.

**3. Same—Case Adhered to.—**Whitehead v. Foley, 28 Texas, 291, adhered to.

Appeal from La Salle.    Tried below before Hon. D. P. Marr.

W. Showalter, for appellants.—1. In 1875 the District Court in Texas had original and exclusive jurisdiction to probate wills, and the judgment of the clerk of the District Court alone, in vacation, probating a will, was absolutely void. Const. 1869, art. 5, secs. 7, 9; 2 Pasch. Dig., arts. 1115, 5462a.

2. A will can not be admitted in evidence in this State unless it has been duly probated in the manner required by law, and in a court of competent jurisdiction. The will of Charles Callaghan was probated by the clerk of the District Court of Webb County, in vacation, in 1875. It was offered in evidence, and admitted over plaintiffs' objection, that the judgment probating the will was void. Ochoa v. Miller, 59 Texas, 461; Brundige v. Rutherford, 57 Texas, 26; 1 Whart. on Ev., sec. 66; 1 Greenl., sec. 518; Abb. Trial Ev., sec. 59.

3. In order that the plea of the statute of limitation of five years may prevail, the evidence must show an actual, visible, and exclusive appropriation of the land. The mere herding of sheep on a large tract of un-enclosed land, on which no one lived, is not sufficient. Sellman v. Hardin, 58 Texas, 86; Murphy v. Welder, 58 Texas, 241; Bell v. McDonald, 9 Texas, 378; Cantagrel v. Von Lupin, 58 Texas, 577; McDow v. Rabb, 56 Texas, 161; Griffin v. West Ford, 60 Texas, 505; Whitehead v. Foley, 28 Texas, 291; Richards v. Smith, 67 Texas, 613; Wood on Lim., 520; Sepulveda v. Supelveda, 39 Cal., 13; Morrison v Chapin, 97 Mass., 72; Morris v. Callanar, 105 Mass., 129; Kennebeck Purchase v. Springer, 4 Mass., 416.

*McLane & Atlee*, for appellee.—1. Under the Constitution and laws in force in 1875, district clerks had jurisdiction, in vacation, to probate wills in all cases where there were no contested issues of law or fact. Const. 1869, art. 5, sec. 9; Act of May 27, 1873; Pasch. Dig., art. 5462a.

2. When a tract of land is well known by a particular name, a devise in a will which describes it by such name is sufficient to identify it. Steinbeck v. Stone, 53 Texas, 382; Brown v. Chambers, 63 Texas, 131; Wright v. Lasiter, 71 Texas, 640.

3. Any person having peaceable and adverse possession of land, using and enjoying the same for the only purpose to which it is adapted and fit, from the year 1871 to the 27th day of May, 1887, and paying taxes thereon and claiming under deeds duly registered, has full title thereto under the laws of limitation of five and ten years.

. As to sufficiency of defendant's possession: Richards v. Smith, 67 Texas, 613.

As to payment of taxes: Pasch. Dig., arts. 7664, 7665, 7717; Rev. Stats., arts. 4737, 4738; Act of August 21, 1876.

Act of March 1, 1879, attaches the unorganized county of La Salle to McMullen County. Act of March 28, 1881, fixes time of holding court in the county of La Salle.

Adverse possession defined: Ivey v. Petty, 70 Texas, 178; Mason v. Stapper, 8 S. W. Rep., 598; Am. and Eng. Encyc. of Law, "Adverse Possession," 225, 252–254, 255–257, 261–265; Jones v. Menard, 1 Texas, 780; Webber v. Clark, 15 Pac. Rep., 431.

As to payment of taxes: Gen. Laws, 1879, ch. 133, pp. 141–143; The State v. Bremond, 38 Texas, 123; Watson v. Hopkins, 27 Texas, 643; Cantagrel v. Von Lupin, 58 Texas, 570.

As to the county in which the deeds should be filed for record, and the effect of filing: Acts of January, 1843, and January, 1850, Pasch. Dig., arts. 421, 5014; Act of February 1, 1858, Pasch. Dig., arts. 319–363; McKissick v. Colquhoun, 18 Texas, 153; Hancock v. Lumber Co., 65 Texas, 231; Jones v. Powers, 65 Texas, 207.

Act of April 26, 1871, Paschal's Digest, articles 5866, 5867, creates and defines boundaries of Webb, Encinal, and La Salle counties.

As to record of original wills: Pasch. Dig., arts. 5372, 5014; Throckmorton v. Price, 28 Texas, 609.

GAINES, ASSOCIATE JUSTICE.—This was an action of trespass to try title, brought by appellants and two other plaintiffs, to recover of appellee a tract of four leagues of land granted by the State by letters patent to Valentin de las Fuentes, "his heirs or assigns." Upon a trial before the court a judgment was rendered in favor of each of two of the plaintiffs for an undivided interest in the land and against the other

plaintiffs in favor of the defendant.    The plaintiffs who lost the suit have appealed.

The trial judge did not prepare formal conclusions of law and fact, but at the request of the parties, filed a brief statement, showing that he gave judgment in favor of defendant against the appellants upon his plea of the statute of limitations of five years.

The plaintiffs introduced testimony which showed that they were the heirs of the original grantee.

The defendants introduced deeds to one Charles Callaghan to the land in controversy (under which he claimed title by virtue of the statute of limitations of five years), and also the will of Charles Callaghan showing a devise of the grant to him.    The will was admitted to probate in January, 1875, by the clerk of the District Court of Webb County.    To the introduction of the will in evidence the plaintiffs objected, upon the ground that the clerk of the District Court had no power to take probate of a will.    The court having overruled the objection, its ruling is assigned as error.

The Act of June 2, 1873, amendatory of that of August 15, 1870, "prescribing the mode of proceeding in District Courts in matters of probate," provided, that the clerks of such courts should have power, among other things, " to probate wills    *    *    * when there is no contest."    (Acts 1873, 175;  2 Pasch. Dig., art. 5462a, p. 1187.)    The judgment admitting the will to probate recites that there was no contest.    But it is insisted, that the Legislature had no power under the then existing Constitution to confer this jurisdiction upon the clerk of the court.    Section 9 of article 5 of the Constitution of 1869 provides, that " the said clerks shall exercise such powers and perform such duties appertaining to the estates of deceased persons, lunatics, idiots, minors, and persons of unsound mind, in vacation, as may be prescribed by law; provided, that all contested issues of law and fact shall be determined by the District Court." If this provision stood alone, the language is clearly broad enough to permit the Legislature to confer the jurisdiction in question.    The probate of wills is a matter " appertaining to the estates of deceased persons."

But it is urged that the language used in section 7 of the same article shows that these words were not intended to be used in so comprehensive a sense.    Section 7 contains this provision:   " The District Courts shall also have original and exclusive jurisdiction for the probate of wills; for the appointing of guardians; for the granting of letters testamentary and of administration; for settling the accounts of executors, administrators, and guardians; and for the transaction of all business appertaining to the estates of deceased persons, minors, idiots, lunatics, and persons of unsound mind, and for the settlement, partition, and distribution of such estates, under such rules and regulations as may be prescribed by law."

We understand the contention to be, that the mention both of " the

probate of wills," and of " business appertaining to the estates of deceased persons," shows that the framers of the Constitution did not understand that the former was included in the latter; and that the same words, when found in section 9, must be construed in the same restricted sense. The argument is certainly plausible. But constitutions, like other written instruments, are not always free from tautology. A striking example is found in both of the sections we have cited, in the use of the words "idiots, lunatics, and persons of unsound mind." The first two might well have been omitted, since lunatics and idiots are certainly "persons of unsound mind." This serves to show that the framers of the Constitution, in drawing section 7, were striving rather to define the powers of the court with great particularity, than to attain either elegance or logical accuracy of diction.

At all events, the probate of wills is a business appertaining to the estates of deceased persons; and we think that the latter words, as employed in section 9, were intended to be construed according to their usual meaning. If the matter of phraseology was thought of at all when the section was written, the more general terms were alone adopted solely for the sake of brevity. We have no serious doubt about the correctness of this construction. But if our doubts were of a more serious character, we should hesitate long before yielding to a construction which would nullify so many judgments upon which important property rights depend. We conclude that the court did not err in admitting the will.

Appellants also complain that the court erred in sustaining the defendant's plea of the statute of limitation of five years. It is claimed, that the evidence was insufficient to support the plea in each of the particulars necessary to be shown in order to complete the bar of the statute. In the view we take of the case, we need only to consider the sufficiency of the evidence adduced in order to show adverse possession. Three witnesses testified in behalf of defendant with reference to his possession of the land, and he testified for himself. Their testimony is in substantial accord, and shows the following facts: The boundaries of the land were at one time marked out, but it was never enclosed. It is fit only for grazing purposes. There have never been any houses upon it. No part of it has ever had any enclosures upon it, except small pens made of posts and brush for the purpose of penning sheep. These were renewed every year. The defendant and Callaghan's heirs were the owners of 65,000 or 80,000 sheep. Their principal ranch was on another tract of land, twenty-three miles distant from the land in controversy. The land was used for "grazing and lambing purposes." How many sheep were kept upon it does not appear. One witness states that in 1871 there were 13,000 sheep upon the land. How many were there during other years is not shown. Another witness says, "When we took the sheep off, we always left goats on it. The sheep and goats were in charge of shep-

herds." Cattle belonging to others were permitted to graze upon the land. The possession, such as it was, was taken by Callaghan in 1871, and seems to have been kept up until the bringing of the suit.

There have been several cases decided in this court in which the effort has been made to show an adverse possession of land by merely grazing cattle and horses upon it; but it has uniformly been held that the possession was not sufficient to meet the requirements of the statute. Mason v. Stapper, 8 S. W. Rep., 598; Sellman v. Hardin, 58 Texas, 86; Andrews v. Marshall, 26 Texas, 212; Murphy v. Welder, 58 Texas, 241. It must be conceded, that in some of these cases were facts as strong in favor of the claim of adverse possession as in the case before us; yet we think them to be sufficient to indicate the rule in this court to be, that the mere occupancy of the land by grazing live-stock upon it, without substantial enclosures or other permanent improvements, as not sufficient to support a plea of limitation under our statutes.

Unenclosed land in this State has ever been treated as commons for grazing purposes, and hence the mere holding of live-stock upon it has not been deemed such exclusive occupancy as to constitute adverse possession. There must be "an actual occupation of such nature and notoriety as the owner may be presumed to know that there is a possession of the land." Whitehead v. Foley, 28 Texas, 291. "Otherwise a man may be disseised without his knowledge, and the statute of limitations run against him while he has no ground to believe that his seisin has been interrupted." 4 Mass., 416.

We think the testimony insufficient to show adverse possession, and therefore the judgment must be reversed.

We deem it unnecessary to determine other questions presented by the second assignment of error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 3, 1892.