ELLERD et al. v. ELLISON et al.

(Court of Civil Appeals of Texas. Amarillo. March 28, 1914.)

1. TRUSTS (§ 373*) — PAROL TRUST — EXISTENCE — QUESTION FOR JURY.

Whether plaintiff, who contracted with O. to purchase certain school lands, agreed to furnish half of the price, O. to take title to one-half the land as trustee for E., *held* for the jury.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 604–606; Dec. Dig. § 373.*]

2. TRUSTS (§ 44*)—PAROL TRUST—WEIGHT OF EVIDENCE.

A parol trust in lands may be established by the evidence of one witness, if it is such as to satisfy the conscience of the court that equitable relief should be administered.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

3. MORTGAGES (§ 497*)—MORTGAGEE AS BONA FIDE PURCHASER.

Plaintiff contracted with O. to share with him in the purchase of school lands which were purchased in the name of O., after which plaintiff leased the land to tenants, who were in possession at the time it was examined by others, who accepted a mortgage thereon from O., in which plaintiff did not join. *Held*, that the mortgagees were charged with notice of plaintiffs' interest, which they could have ascertained by inquiry from the tenants, and hence the foreclosure of the mortgage was effective to pass only O.'s interest in the land.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1469, 1471–1473; Dec. Dig. § 497.*]

4. CONTRACTS (§ 142*)—SCHOOL LAND—AGREEMENT NOT TO BID—QUESTION FOR JURY.

Plaintiff E. and O., being prospective purchasers of certain school land to be sold at public sale, after examining the land, agreed to purchase together, and that O. should bid in the land for both at $7 an acre, which was its reasonable value. This bid was filed and accepted, but before acceptance the county judge and commissioners were informed that plaintiff would not bid, and that O. would purchase for both. *Held*, that whether such agreement was unenforceable as a fraudulent combination to prevent bidding was for the jury.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1826; Dec. Dig. § 142.*]

5. JUDGMENT (§ 736*)—FORECLOSURE—CONCLUSIVENESS.

Where, in a suit to foreclose a mortgage on land of which plaintiffs claimed to own a half interest, plaintiffs were not parties, and were refused the right to intervene to set up their alleged right and claim that the mortgage only covered the half interest of the mortgagor, and plaintiffs' interest was not in issue, a decree foreclosing the mortgage was not res judicata of plaintiffs' claim to the land.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1264, 1265; Dec. Dig. § 736.*]

6. JUDGMENT (§ 728*)—CONCLUSIVENESS.

A judgment is only conclusive on the issues tendered by the complaint, and does not conclude collateral issues or matters of inference arising in the course of the proceeding.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1258; Dec. Dig. § 728.*]

7. ESTOPPEL (§ 63*)—DEED—DEALINGS WITH THIRD PERSONS.

Where plaintiffs claimed a half interest in land purchased by O. under an agreement that he was to purchase for both, and he subsequently executed a mortgage on the land in which plaintiffs did not join, they were not estopped to subsequently claim their rights in the land by subsequent dealings with third parties, nor by a deed to them from O., wherein they covenanted that the deed was subject to the mortgage debt.

[Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 63.*]

Appeal from District Court, Swisher County; L. S. Kinder, Judge.

Action by Reuben M. Ellerd and others against W. P. Ellison and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Carrigan, Montgomery & Britain, of Wichita Falls, for appellants. W. P. Ellison and Etheridge, McCormick & Bromberg, all of Dallas, and Knight & Slaton, of Hereford, for appellees.

HUFF, C. J. This case was tried in the district court of Swisher county, Tex., on a change of venue from Castro county, by agreement. Reuben M. and J. J. Ellerd, appellants, brought this suit against W. P. Ellison, C. O. Hodges, appellees, and J. A. Stevenson. The first count of the petition is in the ordinary form of trespass to try title, and, by a second count therein, appellants substantially allege that about June 15, 1909, J. J. Ellerd, acting for himself and R. M. Ellerd, entered into an agreement with one G. T. Oliver, by the terms of which it was agreed that plaintiffs (appellants herein) and said Oliver should jointly purchase from Motley county four leagues of school land, numbered 176, 177, 178, and 179, and situated in Bailey county and that, when said purchase was made the said land should belong to the appellants and said Oliver jointly, each owning a one-half interest; and it was further agreed that said Oliver should actually purchase said land, and the contract should be made in his name. It was to be purchased at $7 per acre on a credit of 20 years, and the purchase price was to bear interest at the rate of 5½ per cent.; the interest payable in advance. Oliver was to furnish the money necessary to make it a binding contract, and it was agreed that he should be reimbursed for one-half thereof by the appellants; that Oliver did make the contract, with the assistance of the appellants, with the commissioners' court of Motley county, upon the above terms; and that $1,000, was paid as forfeit or earnest money at the time of making the contract, which was to be applied in part payment of the interest for the first year. Oliver obtained the right and option to purchase the land upon the terms set out. Thereafter Motley county conveyed the land by deed to Oliver, and Oliver executed his obligation to the county for the purchase price; that appellants soon thereafter tendered to Oliver, about September 1, 1909, one-half of said sum, which had been paid out by Oliver, and

for which Oliver was then liable, and requested Oliver to convey to appellants an undivided half interest in said land, and that appellants offered to assume one-half of all the obligations to Motley county, which Oliver refused to accept, denying that appellants had any interest in said land, and wholly repudiated the contract and agreement; that Oliver did acquire the land, and continued to deny any contract or agreement with appellants for one-half of the land, and refused to recognize the rights of appellants therein; that appellees claimed the lands by and through conveyances and deeds of trust and mortgages and foreclosure of same as against said Oliver; and that at the time said appellees acquired their conveyances, and at any and all times, said appellees acquired their conveyances in or to all the liens or rights to the said land, and that they and each of them had both actual and constructive notice of the facts set out in the petition, and knew of such facts which were sufficient to put them upon inquiry, which, if reasonably pursued, would have disclosed the facts set out in the petition. It is further alleged that appellants did not know the amount paid out by Oliver or any of the appellees for the purchase of the land or interest on the purchase money or in the payment of taxes or any other expenditure made by them on account of said land, but they tendered and offered to pay one-half of any and all sums so paid out by Oliver or either of the other parties, and offered to pay the sums which the court might adjudge to be necessary to fully comply with their obligation, or should find just and equitable, and to assume one-half of the obligations due to Motley county by Oliver.

The appellees William P. Ellison and C. O. Hodges answered by disclaiming as to subdivisions Nos. 1 to 15 in League No. 176, according to a certain plat referred to; and, from an order of the court, it appears that James A. Stevenson requested a severance, which was granted as to subdivisions 1 to 15, in League No. 176, which it appears Stevenson claimed to own. Ellison and Hodges answered as to the rest of the land in question by general denial and plea of not guilty, and specially by stale demand, for that since September 1, 1909, to April 28, 1913, the land had greatly appreciated in value, and that they and their predecessors in title had paid out large sums of money on said land necessary and essential to keep in force the contract with Motley county, insisting in all installments of interest upon Oliver's obligation, aggregating $24,000, and that it would be inequitable to allow appellants to speculate upon the situation. They further set out that on August 12, 1912, they were the owners of the land in fee simple and entitled to the possession of the land, and then were in possession, and that appellants were asserting some sort of claim to the land, and prayed for judgment against appellants, extinguishing their claim, quieting title, etc.

The trial court, at the conclusion of the testimony, instructed a verdict for the defendants, appellees herein, which action of the court is assigned as error, and several grounds are set up by appellants in propositions urging error in the action of the court in so instructing the verdict. The action of the court in instructing the verdict renders it necessary for an examination of the testimony and the several propositions of appellants, as well as those presented by appellees.

[1] The first proposition is to the effect that the evidence showed, or tended strongly to show, that the agreement was made between Ellerd and Oliver, as alleged, and was sufficient to authorize the jury so to find. The undisputed facts in this case show that Oliver entered into a contract with Motley county to purchase the Motley county school lands, which are the lands in question, agreeing to pay $7 an acre on credit, with 5½ per cent. interest, payable in advance, on 20 years' time, and that he paid down as earnest money $1,000, upon the execution of the contract. Thereafter, in compliance with the contract, Motley county executed to him a deed to the land so contracted for; that this contract was entered into on the 15th of June, 1909; that about September 1, 1909, J. J. Ellerd, for himself and Reuben M. Ellerd, tendered to Oliver one-half of the $1,000 advanced, and requested that Oliver execute to him a deed for one-half, he (Ellerd) at that time agreeing to assume one-half of the contract price for the land. Oliver refused to accept the money, and refused to deed the land or recognize any agreement with reference thereto. J. J. Ellerd testifies in substance that he went with the county judge and commissioners of Motley county to look at the land, with a view of bidding on or purchasing the land; that he met Oliver some seven or eight miles before they got to the land; and he further testifies that they looked over the land in order to ascertain its quality and location, but that he did not bid on the land, for the reason that he and Oliver entered into the contract to purchase the land together; that he at that time was acting for himself and brother, Reuben M. Ellerd; and he testifies to the contract substantially as set out in his pleading. Oliver denies that he entered into an agreement with Ellerd, as testified to by Ellerd, but says that he invited Ellerd to go in with him and purchase the land the day previous to his (Oliver's) closing the contract with the commissioners; that Ellerd said that he did not know for certain whether he would take the land or not, and objected some to its quality. Oliver said that this was the substance of that conversation, but he did not recollect definitely just what

the conversation was. Oliver and Ellerd were on the land, looking at it, some two or three days before the contract was concluded between Oliver and the commissioners' court. Ellerd also testifies that, immediately after the contract was made between Oliver and the commissioners' court, he leased the land to Goode, Bivens, and Gersig, and that they were to pay ten cents an acre for the land. He further testified that afterwards Oliver offered to trade him some other land and pay some money for his (Ellerd's) interest in the Motley county school lands, and sent to him the abstract for the purpose of examination, and that they had some negotiations. There is no testimony, that we are able to find, in the record, denying that the Ellerds had made an agreement with Goode and others for the lease of the land or denying that Oliver had proposed to trade land and pay money for Ellerd's interest in the land in question.

[2] It is established in this state, we think, that an oral agreement made to purchase land jointly is sufficient to establish an express trust upon the legal title held by one of the contracting parties, in favor of the other party to the agreement. Sachs v. Goldberg, 159 S. W. 92; Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381. This proposition does not appear to be controverted in this case by the appellees, but they present the question and proposition that the unsupported testimony of J. J. Ellerd, seeking to ingraft a trust in his own favor upon the title held by Oliver, is not sufficient and will not support a trust upon the legal title. Appellant asserts the proposition that it is sufficient, and also urges that the testimony of Ellerd is supported by other circumstances, which are not controverted in the record. We think there can be no question but that Ellerd's testimony presented the issue. If his testimony is true, there was an express trust under the agreement. The appellees cite us to the cases of Whitfield v. Diffie, 105 S. W. 324, Smalley v. Paine, 130 S. W. 739, and Ingenhuett v. Hunt, 15 Tex. Civ. App. 248, 29 S. W. 310, in support of their proposition. An examination of those cases shows that, while the court indicated that the rule is that a trust cannot be established upon the legal title by the uncorroborated testimony of an interested witness, those cases simply hold that, in the particular cases under review, the testimony was corroborated, and therefore it was unnecessary to invoke the rule. We are inclined to follow the rule, as laid down by Judge Fisher in the cases of Mortgage Co. v: Pace, 23 Tex. Civ. App. 222, 56 S. W. 379, and Powell v. Walker, 24 Tex. Civ. App. 312, 58 S. W. 838, and believe that he states the rule correctly and in accordance with the general trend of the authorities in this state in Mortgage Co. v. Pace, 23 Tex. Civ. App. on page 254, 56 S. W. on page 393. After reviewing the authorities of this state, he

concludes with the following: "The two-witness rule, or the one with corroborating circumstances, which prevails in some of the states in cases of this and like character, does not exist in this state, except in cases where the evidence is of the character mentioned in the case of Mukelroy v. House [21 Tex. Civ. App. 673, 52 S. W. 1038], supra. Such a rule, we think, has no foundation in principle, for, if the evidence is of such a character, whether it comes from one or many witnesses, as to satisfy the conscience of the court that equitable relief should be administered, no hesitancy should be felt in applying the principles that would govern the particular case."

We do not think, from an examination of many of the recent decisions of this state, that two witnesses are required to establish a parol trust, but that one witness may do so, even though he may be the interested party. Where the court or jury, after exercising due caution in weighing the testimony, are satisfied as to the truthfulness of the witness, we see no good reason for making this an exception. Courts, as a rule, have sought for corroborating circumstances, and sometimes seize upon slight circumstances for such corroboration. The testimony of Oliver in this case shows that Ellerd was with him while he was negotiating for the purchase of this land. The commissioners of Motley county were with them. They examined the land together, and discussed its location. Oliver testified: "I invited J. J. Ellerd to join me in the purchase of the land. He made no positive assurance that he would do so. He said the land did not look very good, and that he did not know whether he cared to go in with me. I do not remember the exact words." Ellerd's testimony shows he went to look at the land, would have paid the price, $7 an acre, and more; and that he was able to buy, and would have bought, at that time but for the agreement with Oliver. No one contradicted him on these points. It is admitted that he tendered his money to Oliver some time afterwards and requested deeds, etc. He says he took charge and leased the land, and that Oliver offered to trade him land and pay him money for his interest. This is not denied or disproved by appellees. These were circumstances, together with Ellerd's testimony, which, we think, would carry the case to the jury. Oliver invited Ellerd to go in with him to purchase. Ellerd says he accepted the invitation and did not bid on the land because of the agreement. Oliver said he did not accept, but said he did not know whether he would or not. We think this issue should have been submitted for the findings of the jury on the contradicted, as well as upon the uncontradicted, facts, and that such facts were sufficient to require a finding by the jury. Grace v. Hanks, 57 Tex. 16.

[3] The second proposition of appellants is to the effect that, at the time of the execu-

tion of the mortgage of Oliver to Hodges, it was thereafter foreclosed, under which foreclosure the appellee Hodges purchased; that the appellants were in possession of the land by tenants; and that, under the facts and circumstances, appellees were charged with notice of appellants' equity. Oliver executed a deed of trust on the land in question to Ellison, to secure C. O. Hodges in the payment of four notes for $12,500 each, dated April 1, 1910, which deed was duly recorded. Subsequently, on the 8th day of December, 1910, a second deed was executed, which was given to secure three notes for $11,094.70 each, on the same land, and to Ellison as trustee, to secure Hodges in the payment of said three notes. These three notes were executed for a portion of the indebtedness secured by the first deed. The debt had been reduced by settlement of a certain contract and sale of the St. George Hotel property in the city of Dallas, the details of which it is believed by us to be unnecessary to set out at this time. These last notes were foreclosed in a suit in Hall county, which had originally been instituted by Oliver to enjoin Ellison and Hodges from selling the land under the power of sale contained in the deed of trust. In that suit Hodges and Ellison set up the notes and lien and asked for a foreclosure. Judgment was therein rendered foreclosing the lien, and, under an order of sale issued thereon, the land was sold and bought in by Hodges, and a deed duly executed to him by the sheriff making the sale conveying the land to Hodges. Before the deed of trust first mentioned was executed by Oliver to Ellison, to secure the four notes for $12,500 each, due Hodges, Hodges, Ellison, and one Pyron, who was then acting for Hodges in the sale of the St. George Hotel property of Oliver, out of which trade the above indebtedness originated, visited the land in question. They each testify that at that time they saw a ranch house near the land, three windmills on the land, all running, with tanks for the purpose of watering the cattle, and cattle around over the land. They made no inquiry whatever as to who owned or controlled the cattle, windmills, and tanks. They testify Oliver told them the land was leased, but they did not ask who the lessee was, and did not ask the lessee from whom they had leased the land. They then made no inquiry as to who was controlling the tanks, windmills, cattle, etc. This trip was made in March, 1910, and upon their return to Dallas, about the last of March, or the first of April, the deed of trust first mentioned was executed. The evidence tends to show that Goode, Bivens, and Gersig and the Van Natta boys were using the land under some sort of lease contract, paying for the use of the grass. That the land in question was inclosed in a pasture of some 12 or 13 leagues of school land, belonging to other counties, all of which was surrounded by a fence. J. J. Ellerd testified Goode, Bivens, and Gersig were in possession from June, 1909, through and during the year 1910, and up until June, 1912, and agreed with him to pay the lease on the appellant's interest in the land, and that Bivens told J. J. Ellerd that he was protecting him (Ellerd) in his interest in the grass, which was one-half, at the rate of ten cents per acre, and that Ellerd then agreed to let him keep possession of it, and they had possession of this land until about June 1, 1912, and that he (Ellerd) leased it after that to Mr. Ellwood and Mr. Arnett, who, at the time of the trial, had possession of the land.

While the legal title was in Oliver, if Ellerd's testimony is true, Oliver held an undivided half interest in trust for Ellerd, and Ellerd had placed tenants in possession of the land, who, under the agreement, would pay him one-half of the lease contract. The tenants were therefore holding possession of the land for these joint owners, and had promised Ellerd to see that he should get his one-half and should be protected in his interest. An inquiry of the tenants as to their use and possession of the land and for whom they were holding it would have revealed whether this was true or not. Ellerd is uncontradicted as to this agreement by the record. We think the case of Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258, supports the proposition that the possession of Ellerd by tenant was a clear and distinct assertion of a claim of ownership, and therefore was an exclusive one, in the sense in which that term is used. The law puts the purchaser or creditor upon inquiry as to the possession, and does not permit him to assume that the possessor was holding under or in subordination to the legal title. Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184. It has been held in this state that a tract of land inclosed within the limits of large pasture and used for the purpose of pasturage constitutes constructive notice of the title under which it was claimed. League v. Buena Ventura Stock Co., 2 Tex. Civ. App. 448, 21 S. W. 307. That cause cites the cases of Taliferro v. Butler, 77 Tex. 578, 14 S. W. 191, and Church v. Waggoner, 78 Tex. 200, 14 S. W. 581, which hold that title by limitation may be obtained to a tract of land inclosed with other lands in a large pasture used for grazing purposes, and announce the rule that such possession is sufficient to evidence an exclusive adverse holding.

The appellees cite the case of Fuentes v. McDonald, 85 Tex. 132, 20 S. W. 43, as holding that the mere grazing of cattle on the lands is not sufficient to give notice or to prescribe under the statutes of limitation. The land in that case was not inclosed under a fence and the cattle or stock of others excluded therefrom, but it was used in common by all alike. The evidence in this case tends to show that the land in controversy

was inclosed by a fence, and was controlled by the tenants of the appellants and used for the purpose of grazing their own cattle, and for the use of which they paid ten cents per acre. We are inclined to believe the facts in this case raise the issue and are sufficient to have presented to the jury for their finding upon the question of constructive notice.

[4] The appellees contend the trial court was correct in instructing the verdict because the testimony of Ellerd shows that, if there was an agreement to create a trust, it was upon a consideration to stifle competition in the purchase of the land, and therefore void on the ground of public policy. Ellerd testified that Oliver told him he had been to quite a little expense to buy the land, and, if he did not get it, it would be hard on him. Ellerd testified: That he told Oliver he had gone over there to examine the land at the request of the commissioners and the county judge, and expected to bid what he thought it was worth. That there were two of them there that wanted the land. A Mr. Ansley was present, but did not desire to buy or bid on the land. That Oliver made the proposition to Ellerd that they buy the land, Ellerd to take a half interest, and that they could make more money out of the land by taking each a half interest at the price of $7 than one could by taking all and paying more. After talking with Oliver, Ellerd talked with the county judge and told him he did not think that they had seen the land as it was situated; that it was shown as being, as he thought, too far north and in the sand hills, and he thought the land owned by the county was better than that shown them by Oliver, and advised them to continue the examination until they had seen the land. He stated he thought the land was worth more than $7. Oliver had approached him and insisted they take the land at $7 an acre at once; that he (Ellerd) was willing to take the land at $7 per acre if it was just like Oliver showed it, and told the county judge the same thing, and also told Oliver he would take the land if he could bid it in at $7. He did not think he had said anything about bidding on the land himself at that time, and the reason he did not bid was that the proposition of Oliver suited him better. He testifies he was able to have bid individually upon the whole land. If he bought the land or any part of it, he wanted to buy it as cheap as Oliver could; that by the agreement there was only one bid instead of two. He testifies he told the county judge he was not going to bid on the land; that he and Oliver had agreed to buy together, and the county judge said that that was satisfactory. The commissioners and the county judge seem to think they had seen the land, and all parties then thought that $7 was all that it was worth. "I told them if the land was the way I thought it was that I would bid more for the land than $7, and would have paid more but for the agreement with Oliver." We are

cited to no evidence that the land was at that time sold below its market value, or actual value, unless the statement of Ellerd that he would have bid more is such.

We think it may be stated, as the general rule, that a contract entered into by several persons, under which one of them is to purchase property at public sale for the benefit of all the parties, is void against public policy, and is ground for setting aside the sale, where it appears to have been made to prevent competition at the sale or for any other fraudulent purpose. The mere combination only does not amount to such a fraud as to render the contract unenforceable and to constitute grounds to set aside the sale. This, we think, is the effect of the holding in James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743, and several other Texas authorities. White v. McMath, 127 Tenn. 713, 156 S. W. 470, 44 L. R. A. (N. S.) 1115. The question is: Was the agreement between Ellerd and Oliver an agreement to stifle competition at the sale of the land? Or was it made for any other fraudulent purpose? These questions, we think, are for the jury, under all the facts in the case, and should be left for their determination. Hunt v. Elliott, 80 Ind. 245, 41 Am. Rep. 794; Jenkins v. Frink, 30 Cal. 586, 89 Am. Dec. 134; Bradley v. Coolbaugh, 91 Ill. 148. Parties may lawfully agree to purchase the land jointly, taking it in the name of one. There is nothing against a party refusing to bid on land, and, so long as he does not enter into a combination to prevent competition or for a fraudulent purpose, the transaction is not void. Before the county judge and commissioners accepted Oliver's proposition, they were informed Ellerd would not bid, but, if Oliver purchased, he would do so for both. The county judge expressed himself as satisfied with the arrangement. If Oliver and Ellerd together, or with the county judge, entered into this arrangement to defraud the county in obtaining a fair price for the land, then the contract would be nonenforceable, but this should be left as a question for the finding of the jury.

[5] The appellees contend in this cause that the judgment in the Hall county case was res judicata, while appellants contend that the questions therein decided did not involve the issues presented in this case, and therefore do not conclude appellants in this case. In addition to the statement of the facts heretofore set out, we should state that the suit originally instituted by Oliver against Hodges, and which was prosecuted to final judgment in Hall county, was upon a petition for injunction filed by Oliver, setting out at great length the contract between Oliver and Hodges with reference to the sale of the St. George Hotel in Dallas, and a rescission of that trade and the execution of the three notes which were then sought to be canceled, together with the deed of trust on the land because of fraud in the settlement or rescission of the trade therein set out, on

the grounds that Oliver was mentally incapacitated, by reason of intoxication and the impairment of his mental faculties by continued drinking at that time, and that thereby he was over-reached and induced to enter into the rescission and settlement contract which culminated in the execution of the notes and deed of trust therein sought to be enjoined. Hodges and Ellison answered this petition at great length, setting out the contract and the settlement according to their view of the matter, and denying any fraud upon their part or the mental incapacity on the part of Oliver. In addition thereto they filed a cross-petition against Oliver, setting up the three notes for $11,094.70 each, asking for a foreclosure of their mortgage lien. The judgment rendered in that court was in effect that Oliver take nothing by virtue of his petition, asking for cancellation of the notes and deed of trust, and that the lien given to secure the three notes be foreclosed and the property sold to pay the indebtedness. Previous to the rendition of this judgment the Ellerds, appellants herein, brought suit against Oliver in the district court of Castro county, setting up the express trust on the legal title of Oliver, substantially as set out in this case. That case was taken on change of venue to Wilbarger county. The Wilbarger county district court met some months before the Hall county district court, and, during the term of the district court of Wilbarger county, the Ellerds dismissed the suit against Oliver. In the meantime it appears from the record that Oliver executed a special warranty deed on the 12th day of October, 1911, before the case was dismissed in Wilbarger county, and before judgment was rendered in the Hall county case. By this deed he conveyed all of his right, title, and interest in the land to Reuben M. Ellerd, J. J. Ellerd, Pyron and wife, and H. G. Hendricks. On the same day the parties, the grantees in the deed, entered into a contract among themselves, which they signed. This contract recited that J. J. Ellerd has an equitable claim against said G. T. Oliver for a one-half undivided interest in the land in question, referring also to the suit which was thereafter dismissed, and further set out the interest which the respective parties to the contract should have in the land, agreeing also to sign articles of incorporation, enjoying an interest in the corporation in the proportion to their respective interest in the land; agreeing further to bear their proportional part of the expenses. The clause upon which appellees rely largely is as follows: "It is further agreed that said parties will pay, according to their interest in said land, all fixed charges upon said property, excepting that said G. T. Oliver's conveyance and this said contract herein made is subject to the indebtedness held by Motley county against said land and the indebtedness and lien held by said Charles O. Hodges in the principal

sum of $31,000. * * *" It is also agreed that: "The said H. G. Hendricks and the said Reuben Ellerd agree in the litigation styled Reuben M. Ellerd v. G. T. Oliver and others, and G. T. Oliver against Charles O. Hodges, representing all parties in said suit to the best of their skill and ability; the other parties, however, agreeing to pay their expenses in conducting such litigation." The purported consideration for the sale of Oliver's interest in the land appears to have been, or is, recited in the deed as $1,500, and there was an understanding or agreement that, if the notes were defeated, he should have an additional sum of $2,000. J. J. Ellerd testified that after that date they were interested in the prosecution of the suit in Hall county.

At the trial of the case in Hall county, the record shows, from motions and pleas filed therein, that, after the case had been in progress for two days, Oliver came into open court and confessed that he was liable on the notes as set out by Hodges' answer on cross-petition, and requested the trial court to render judgment thereon and for the foreclosure, as prayed for by Hodges in his cross-petition. Reuben M. Ellerd and J. J. Ellerd thereupon filed a motion, called a motion for postponement, setting out the fact substantially that they had purchased Oliver's interest in the land, and also that they had an equitable interest in half of the land, and that Oliver had, without their consent, confessed judgment on the note, and asked for the postponement until they could prepare their defense in the matter. The trial court in that case overruled this motion. Whereupon the Ellerds asked and filed a motion to be permitted to intervene in order that they might set up their rights and equities, in some measure setting out what their equities were. The other parties to the contract above set out did not join with the Ellerds. The court refused the Ellerds' motion and overruled the same, thereby refusing to grant them permission to intervene. Whereupon the judgment heretofore mentioned was rendered, foreclosing the lien against Oliver as it appeared to be on the 9th day of December, 1910. The appellants, Ellerds, were not made parties, either plaintiffs or defendants, in the Hall county case, and, if they were parties, they were so by an understanding and agreements heretofore set out. In the case now before this court, it does not appear that the Ellerds are resting their rights upon the contract with Oliver or the agreement made with other parties, but are relying alone upon their oral agreement, made with Oliver at the time the land was purchased from Motley county, by Oliver.

The issues joined in the Hall county case were whether or not the notes and deed of trust were void under the facts alleged therein. If they were not, then appellees were entitled to a foreclosure. The lien attached to Oliver's interest at the time the deed was given, and to no more. If he had only a

half interest when Hodges took the lien, if Hodges knew that Ellerd had an undivided half interest in the land, or if he was in possession of facts which charged him with notice, then Oliver's conveyance by the deed of trust would have conveyed to Hodges no more than Oliver's interest, and the foreclosure would have been only the interest that Oliver then owned. Clearly, before Hodges took his foreclosure, he knew Ellerd was claiming a one-half interest, and, if he desired to preclude Ellerd in that suit, he should have set up the necessary facts requiring Ellerd to maintain his right or be concluded by the judgment. This he did not do.

[6] That judgment did not conclude matters not then directly in issue, or which were only collateral issues, or matters of inference arising in the course of the proceedings. Mortgage Co. v. Macdonell, 93 Tex. 398, 55 S. W. 737; Campbell v. Upson, 98 Tex. 442, 84 S. W. 817; McDonald v. Miller, 90 Tex. 309, 39 S. W. 89. The rule is frequently and broadly stated to be that a judgment "is not only final as to the matters actually determined but as to every other matter which parties might litigate in the cause, and which they might have had decided." In the case of Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596, this question is discussed by our Supreme Court, and quoting from Freeman on Judgments, § 248, with reference to this matter, the following: "The general expression often found in the reports that a judgment is conclusive of every matter which parties might have litigated in the action is misleading. What is really meant by this expression is that a judgment is conclusive upon the issues tendered by the plaintiff's complaint. It may be that plaintiff might have instituted other causes of action with that set out in his complaint, or that the defendant might have interposed counterclaims, cross-bills, and equitable defenses, etc.; * * * but, as long as these several matters are not tendered as issues in the action, they are not affected by it." The Supreme Court, in commenting on the quotation, said: "That we understand this to be the true doctrine and the principle that all matters are concluded that might have been litigated has not been differently applied by the judgments of this court in cases cited by appellants. The statement has always been made with reference to some matter that was comprehended within the issues in the former action and in causes of action distinct from those before asserted and adjudicated."

The title or equity of the Ellerds was not included in the issue in the Hall county judgment. Oliver's interest was only involved. The judgment foreclosed the lien only as it existed on the 9th day of December, 1910. That lien was fixed on the land at that time and to such interest as the law and equity under the facts fixed in Oliver, and no great-

er. Under the pleadings in the Hall county case, the equities of the Ellerds could not have been adjudicated, and, as we understand the decisions of the courts, appellants were not required to put their equities in issue or have them concluded. It was not the time or place for them to do so. If appellees desired to remove the equity or claim of Ellerds as a cloud upon their title, they had a right so to frame their pleadings; but, having failed to do so, we do not think it can be said that the judgment concluded the equitable interest of the Ellerds. On the question of the failure of the trial court to permit Ellerd to postpone the cause upon Oliver confessing judgment in that court on the notes and refusing to allow them to intervene, we think should not be construed as a determination of the equities claimed by Ellerd in this case.

In the case of Converse v. Davis, 90 Tex. 462, 39 S. W. 277, the Supreme Court said: "The fourth special exception was improperly sustained because it does not appear from the petition that the cause of action here asserted, the right to have a substitute trustee appointed, was in any way involved in the cause of Davis v. Andrews, and because it does appear from the petition that, in said cause, neither the existence of the debt nor the validity of the lien was adjudicated, but it was simply held that, on account of the defense of limitation of four years set up by Davis in avoidance of a judgment against him, the executors were not entitled to a personal judgment on the notes and a foreclosure on and judicial sale of the property. While the prima facie effect of a general decree is to adjudicate every issue raised by the pleadings, it has never been held, in any case that we are aware of, that a decree adjudicates any issue which the court therein expressly excludes from its determination." Norris v. Belcher, etc., 98 Tex. 176, 82 S. W. 500, 83 S. W. 799; Guthrie v. Pierson, 35 S. W. 405.

Conceding that Ellerds were really parties at interest in the suit at the time of the rendition of the judgment, it nevertheless affirmatively appears that the equitable interests of the Ellerds were not adjudicated in that case, and that the trial court refused to permit the issues to be made and tried in that cause. We do not think res judicata will estop appellants in this case. There in fact is no plea of estoppel by judgment set up in this case by the appellees, and we think it very doubtful whether, under the appellants' petition, the plea by estoppel could be dispensed; but inasmuch as the testimony does not appear to have been excepted to, and both parties have devoted much of their brief to this question, we thought it proper, as the case will be reversed, to express our views on this question.

[7] Appellees, by counter proposition, assert the Ellerds are estopped because they took a deed from Oliver wherein they cove-

nanted that such deed was subject to appellees' mortgage debt. In the first place, there is no estoppel alleged by virtue of this deed, and the appellants in this case do not assert any right under that deed or the agreement made at that time, and, in the next place, the appellants do not sue for Oliver's interest in the land, but from the pleadings and evidence recognize that appellees have Oliver's interest, which is one-half of the land. True, they acquired Oliver's interest, subject to the mortgage, and could not set up that title to that interest as against the mortgage without offering to pay the debt, but the half interest for which they sue was acquired before the mortgage, if there was in fact any such interest acquired. The subsequent dealings of the Ellerds with other parties we do not think can be shown by appellee to defeat Ellerds' prior equity as an estoppel. There could be no estoppel as to the half interest sued for in this case. Appellees, by such deed and contract, were not thereby induced to take the deed of trust from Oliver on the land, or to in any way change or alter their position. Kopplemann v. Kopplemann, 94 Tex. 40, 57 S. W. 570. The deed and contract is perhaps admissible as any other fact would be admissible, but not as an estoppel to appellants' claim or an express trust for one-half of the land.

We believe the court was in error in instructing a verdict for the appellees, but that he should have submitted the issues to the jury for their findings.

The judgment will therefore be reversed, and the cause remanded.

HENDRICKS, J., not sitting.