Mrs. Louise HENDERSON, Appellant,

v.

Billy GOODWIN et al., Appellees.

No. 6617.

Court of Civil Appeals of Texas.

Beaumont.

May 23, 1963.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for appellant.

Dies, Anderson & Dies, Lufkin, for appellees.

McNEILL, Justice.

This action was one in trespass to try title instituted September 18, 1953, by Mrs. Louise Henderson, appellant, against appellees Billy Goodwin and Virgil Redd, seeking recovery of a tract of 33 acres situated in the northwest corner of the John Watson Survey in Angelina County. Virgil Redd, joined by his wife, Evie Redd, answered pleading "not guilty" and the benefit of the various statutes of limitation in land actions claiming that they had had adverse and peaceable possession of the premises described in appellant's petition for the various periods of time sufficient to mature title by limitation. Billy Goodwin, joined by his wife, Mazy Lee Goodwin, and her mother, Mrs. Cora Wise, a widow, filed similar answer.

Upon the trial, appellees disclaimed as to all of the 33 acre tract except the portions marked "R" and "G" shown on the sketch below. Redd and wife claimed tract "R", consisting of about 6 acres, and Goodwin and wife and her mother claimed tract "G" of about 7 acres. Appellant proved record title to the premises and the contest resolved itself into whether appellees had shown adverse possession of these tracts "R" and "G". The court submitted two issues to the jury. The first was one inquiring whether Billy Goodwin and wife and her mother for any period of ten consecutive years before September 18, 1953, had had peaceable and adverse possession of the land described as tract "G", cultivating, using or enjoying same. The other issue was of similar language with reference to the peaceable and adverse possession of Virgil Redd and wife as to tract "R". Both of these issues were answered in the affirmative and upon such verdict, the trial court rendered judgment for Goodwin and wife and her mother as

to tract "G", and in favor of Redd and wife as to tract "R".

Appellant makes various attacks upon this judgment. In order to understand the controversy, a sketch has been prepared of the area involved. This sketch follows.

This map is only approximately correct and is used for illustrative purposes only. The 33 acre tract described in plaintiff's petition is bounded by the figures 1, 2, 3, and 8 on the map and is the northwest portion of the John Watson League bordering the Neches River. Directly north of the 33 acres is the S. Cheatham 181 acre Survey and it is bounded by the figures 2, 4, 7, 9 and 3; its south line being the north boundary of the 33 acre tract in suit.

J. M. Wise and wife, Mrs. Cora Wise, became the owners by deed in 1911 of the tract marked "Goodwin 45 acres" on the

sketch. The south boundary of this tract is shown by the line 2–11. About 31 years ago Billy Goodwin married the daughter of the Wises and built a home on the north part of the Goodwin tract. Wise was then dead and his widow lived with her daughter and son-in-law, Billy Goodwin, for all this period of 31 years. Goodwin testified that soon after moving on the premises he built a fence from points 4 thru 2 to 1, from 4 to 5 and from 5 thru 11 to 8. There was no material controversy that fences were built and maintained along the lines indicated for some 30 years. There is, however a material conflict in testimony as to whether a fence was built and maintained for any appreciable time along the line 1–8.

J. E. Wells owned all of the Cheatham Survey except the east 45 acres. About 1936, Wells' wife died and he then conveyed to two of his daughters, for their mother's share in the property, the tract labeled the "Redd 45 acres" tract, the south line of which is 10–11. Wells' daughter, Evie Redd, was conveyed a tract at the north end consisting of about 10 acres and a tract of some 12 acres at the south end of the Redd tract. In between was situated a 22 acre tract which was conveyed by Wells to his daughter, Allie Birdsong. Redd and wife built a home on the north 10 acre tract, and Mrs. Birdsong and her husband, who died years ago, built a home on the middle tract of 22 acres. Mrs. Birdsong has continued to live on the 22 acre tract. During all times material hereto, there has been no fence either along the line 6–14 nor along the line 2–3.

■■■ Appellant urges that the evidence fails to raise the issue of adverse possession as to either tract "R" or tract "G" and, in the alternative, that the evidence is insufficient to sustain the finding of the jury as to each tract. We have carefully read the entire Statement of Facts. It is our conclusion therefrom that appellees Redd and wife have failed to make a case for the jury as to tract "R". The testimony shows that these tracts of land, both "R" and "G", were fit only for timber growing, cattle grazing, and hunting and fishing. In order to show continuous occupancy, both groups of appellees have necessarily relied upon their cattle grazing upon the tracts in dispute. The evidence most favorable to the Redds indicates that they sold timber off tract "R" a few times over the period of some 25 years involved, hunted and fished over the land, and that their cows grazed over the area. However, the evidence is conclusive that there was no fence along the line 6–14 and that other people who owned tracts in the Wells 90.7 acres had unfenced premises and the cattle in the neighborhood, including those belonging to the Birdsongs, grazed back and forth over all of the land west of line 5–8. Several witnesses testified that this area between points 5, 8, 3, 9 and 7 was open range territory where cows of several owners grazed at will, as well as some hogs and goats that went over the area.

This evidence fails to raise an issue for the jury as to tract "R". No improvements of any kind were ever placed by appellees Redd on this tract. They held possession of their premises north of the disputed area under deed and it is presumed that their possession only extended to the boundaries of their deed. In order, therefore, to establish adverse possession of the adjoining tract "R", it was necessary for them to "* * * have actual possession of such additional land of such a character as of itself will give notice of an exclusive adverse possession and mature into title after the statutory period." Harmon v. Overton Refining Co., 130 Tex. 365, 109 S.W.2d 457 (460).

It was held in De Las Fuentes v. Macdonell, 85 Tex. 132, 20 S.W. 43, that the grazing of uninclosed land will not mature limitation title. There the adverse claimants grazed sheep and had a few sheep pens made of brush and posts on the premises. The land was only fit for grazing purposes. Cattle of others were permitted

to graze upon it. In holding that the facts were not sufficient to sustain the adverse possession claimed, the court said:

"* * * the mere occupancy of land by grazing live stock upon it, without substantial inclosures or other permanent improvements, is not sufficient to support a plea of limitation under our statutes. Uninclosed land, in this state, has ever been treated as commons for grazing purposes; and hence the mere holding of live stock upon it has not been deemed such exclusive occupancy as to constitute adverse possession."

This holding was reaffirmed in Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781.

That timber was sold and removed from the land a few times over the period of some 25 years will not sustain an adverse claim; nor will hunting over the land and fishing in its waters do so. And when the claimed uses are considered together, they fail to complement one another so as to constitute continuous and exclusive possession of the land. W. T. Carter & Brother v. Ruth, Tex.Civ.App., 275 S.W.2d 126.

■ However, appellees Goodwin, wife and mother-in-law are in better position. This is so for the reason that there was substantial testimony that during the last 30 or so years there was built and maintained a substantial fence between points 1 and 8, (including the testimony of Goodwin that he, himself, built and maintained this fence) and that during this time Goodwin's cattle and those belonging to his mother-in-law grazed upon and were kept within the inclosed pasture. If this evidence is believed, these cattle were thus contained within a fence that included substantially all of the Goodwin 45 acres and tract "G". It was also shown by Goodwin and others that he sold timber which was cut off of this disputed land four or more times over this period. He hunted on this land often and used Cow Slough, that runs

just north of and parallel to line 1–8, as a place of anchorage for his boats that he used in the river. In addition, he testified that he had a small ¼ acre garden on a high strip near the edge of the river that he claims to have used several years. This garden spot was separately fenced.

■ Appellant asserts that since both Goodwin and Mrs. Wise, his mother-in-law, claimed this tract "G" that there was no exclusive possession as required under the statute. The 45 acre Goodwin tract was the community property of J. M. Wise and Mrs. Cora Wise. When Wise died, his one-half interest descended to his daughter, Goodwin's wife. Hence, the relation of tenants in common existed between the Goodwins and Mrs. Wise as to the 45 acre tract. Since they made no distinction of their use and occupancy between the two tracts, it will be presumed they were claiming tract "G" as tenants in common. Persons claiming in such relationship may acquire title by adverse possession. Anzaldua v. Richardson, Tex.Civ. App., 287 S.W.2d 299; 2 Tex.Jur. (2) 143–144.

■ Before the court submitted his charge to the jury, appellant requested an issue as to whether the tract identified as "G" was not under an inclosure, as that term had been defined, until after 1945. In connection with this issue, appellant requested an instruction defining what an inclosure was, as follows:

"* * * in order for lands to be held under an enclosure, the lands must be enclosed by fences or partly by fences and partly by natural barriers, such as rivers, mountains or cliffs, which are sufficient to prevent cattle of ordinary disposition from escaping from or entering onto the lands. To constitute an enclosure the fences must have been reasonably maintained, and any temporary breaks or gaps must have been repaired within a reasonable length of time."

Both the issue and instruction were re-fused. Because of the conflict in the evidence as to whether a substantial fence existed along the line 1–8, we think the requested issue and instruction should have been given. De Las Fuentes v. Macdonell, supra; Sharrock v. Ritter, Tex.Civ.App., 45 S.W. 156; Freedman v. Bonner, Tex. Civ.App., 40 S.W. 47; Marion County v. Sparks, Tex.Civ.App., 112 S.W.2d 798; Walker v. Maynard, Tex.Civ.App., 31 S. W.2d 168 (171).

From what has been said above, it is ordered that that part of the trial court's judgment vesting the title to tract "R" in appellees Virgil Redd and wife, Evie Redd, is reversed and judgment therefor is rendered in favor of appellant Mrs. Louise Henderson; and that part of the judgment vesting title to tract "G" in appellees Billy Goodwin and wife, Mazy Lee Goodwin, and Cora Wise (Maples) is reversed and remanded.