IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00382-CV

 

Kathleen Moore,

                                                                                    Appellant

 v.

 

G. Z. Stone and W. D. Wolf,

                                                                                    Appellees

 

 



From the 87th District Court

Limestone County, Texas

Trial Court No. 27,025-B

 



Opinion










 

            This appeal involves the determination by a jury
that G.Z. Stone and W.D. Wolf adversely possessed approximately 16 acres and 3
acres, respectively, of land claimed under title by Kathleen Moore.  Various
theories of adverse possession were submitted to the jury:  possession by both
Stone and Wolf for the statutory periods of 3, 5, 10, and 25 years, and
possession by acquiescence.  The judgment was written generally and awarded the
disputed land to Stone and Wolf.  Because there was no evidence to prove
adverse possession for the statutory period of 10 years, and because the trial
court erred in submitting questions to the jury regarding adverse possession
for the statutory periods of 3, 5, and 25 years, and acquiescence because there
was no evidence in support of those questions, the trial court’s judgment is
reversed and a judgment is rendered that Stone and Wolf take nothing.

Background

            C.C. Stone, the predecessor in
interest to G.Z. Stone[1] and
W.D. Wolf, and Harold Seamans, the predecessor in interest to Kathleen Moore[2], each owned separate tracts of
land that shared a common boundary, Elm Creek.  In the 1960’s, C.C. Stone and
Seamans, built a fence beyond Elm Creek and on Seamans’s land.  No testimony
was produced as to the purpose of the fence or why it was built at that
location.  This fence encroached on approximately 19 acres of Seamans’s land.  

            W.D. Wolf bought some of C.C. Stone’s
land in 1974.  G.Z. Stone inherited some of his father’s land in 1982.  Both
grazed the 19 acres owned by Seamans.  Moore and her sons purchased Seamans’s land
in 1999.  Her sons deeded their interest to Moore in 2000.  In 2003, Moore tore down the fence which prompted a trespass to title action filed by Stone and
Wolf.  Stone claimed approximately 16 acres of the disputed 19 acres as his own
while Wolf claimed approximately 3 acres of the disputed 19 acres as his own.

            Because the judgment does not specify
upon which theory it relies for awarding Stone and Wolf possession of the
disputed land, we group and discuss Moore’s issues out of order so that we may
more easily come to a conclusion without too much redundancy.

No Evidence—Ten Year
Limitations Period

            In her second issue, Moore contends
that the use of the land by Stone and Wolf was insufficient to establish
adverse possession under the 10 year limitations period.  Specifically, she
argues that there was no evidence to support the jury’s finding of adverse
possession under the 10 year limitations period because Stone and Wolf did not
establish actual possession of the disputed property which was adverse or
hostile to the claim by Moore.

Standard of Review

            In reviewing a finding for legal
sufficiency, we credit evidence that supports the finding if reasonable jurors
could, and disregard contrary evidence unless reasonable jurors could not.  See
Kroger Tex. Ltd. P'ship v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006); City of Keller v. Wilson, 168 S.W. 3d 802, 827 (Tex. 2005).   By filing
a motion for judgment notwithstanding the verdict on the grounds that there was
no evidence of adverse possession under the 10 year statute, Moore preserved
her no-evidence complaint.  See T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220 (Tex. 1992).

Adverse Possession—generally 

            Adverse possession is "an actual
and visible appropriation of real property, commenced and continued under a
claim of right that is inconsistent with and is hostile to the claim of another
person" throughout the statutory period.  Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (Vernon
2002).  The statute requires that such possession be "inconsistent
with" and "hostile to" the claims of all others.  Minh Thu
Tran v. Macha, 213 S.W.3d 913, 914 (Tex. 2006).  One seeking to establish
title to land by virtue of the statute of limitations has the burden of proving
every fact essential to that claim by a preponderance of the evidence.  Rhodes
v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990).  And inferences are never
indulged in the adverse claimant’s favor.  Bywaters v. Gannon, 686
S.W.2d 593, 595 (Tex. 1985).

            The 10 year statute of limitations
provides:

            (a)  A person must bring suit not
later than 10 years after the day the cause of action accrues to recover real
property held in peaceable and adverse possession by another who cultivates,
uses, or enjoys the property.

 

Tex. Civ. Prac. &
Rem. Code Ann. § 16.026(a) (Vernon
2002).  Moore argues that there was no evidence that Stone or Wolf cultivated,
used, or enjoyed the disputed land in peaceable and adverse possession.

Adverse Possession—use of land

            Wolf acquired title to his property in
1974.  Stone acquired title to his property in 1982.  The fence, which included
the disputed property with Stone’s and Wolf’s property, was built in the 1960’s
by Stone’s father and Moore’s father.  There was no testimony as to its
purpose.  From Wolf’s testimony, it appears that he broke ground on his claimed
portion of the disputed property, that being about 3 acres, within the first
two years after he purchased his property to plant “oats or something.” 
Thereafter, he used the disputed land for cattle grazing.  After acquiring
title to his land in 1982, Stone only used the disputed land for grazing and
cutting hay.  

            The adverse claimant who relies upon
grazing only as evidence of his adverse use and enjoyment must show as part of
his case that the land in dispute was designedly enclosed.  McDonnold v.
Weinacht, 465 S.W.2d 136, 142 (Tex. 1971).  When the disputed tract of land
has been enclosed with other land, especially when such other land is held by
the possessor under deed, the enclosure is casual or incidental, and the
occasional grazing of the disputed tract by cattle will not amount to such
adverse and hostile possession and use as will support the statute of
limitations.  Orsborn v. Deep Rock Oil Corp., 267 S.W.2d 781, 785 (Tex. 1954).  If the fence existed before the claimant took possession of the land, and the
claimant fails to demonstrate the purpose for which it was erected, then the
fence is a "casual fence."  Rhodes v. Cahill, 802 S.W.2d 643,
646 (Tex. 1990).  Repairing or maintaining a casual fence, even for the express
purpose of keeping the claimant's animals within the enclosed area, generally
does not change a casual fence into a designed enclosure.  Id.; McDonnold,
465 S.W.2d at 142-43. 

            Further, the general rule is that
cutting and gathering a natural crop, such as hay, does not constitute adverse
possession.  McDonnold v. Weinacht, 465 S.W.2d 136, 144 (Tex. 1971).  And sporadic cultivation also does not constitute adverse possession.  See
Stevens v. Pedregon, 106 Tex. 576, 579 (Tex. 1915); Dunn v. Taylor, 113 S.W.2d 265, 268 (Tex. 1908).

            Because there was no testimony about
the purpose of the fence built and because the fence existed before Stone or
Wolf took possession of the property, the fence was a casual fence.  Further,
Stone and Wolf only used the land for grazing and cutting hay[3] which does not constitute adverse
possession.  And, the fact that Wolf broke the ground once to plant oats is, at
best, sporadic cultivation and does not constitute adverse possession. 
According to case-law, Stone’s and Wolf’s testimony is no evidence of adverse
possession.

            There being no evidence to establish
adverse possession under the 10 year limitations period, Moore’s second issue
is sustained.  The trial court’s judgment could not be based on possession
under the 10 year limitations period.

Error in Submitting
Questions

            In her first issue, Moore argues that
the trial court erred in submitting questions regarding the 3, 5, and 25 year
limitations periods as to both Stone and Wolf because neither Stone nor Wolf
had color of title or a deed to the disputed property.  Moore objected to the
submission of these questions, but the trial court overruled her objections and
submitted them as Question Nos. 1, 2, 3, 6, 7, and 8.  The jury answered “yes”
to each question.

            In her third issue, Moore contends
that Stone and Wolf did not establish the elements of acquiescence. 
Specifically, she contends the trial court erred in submitting, over Moore’s objection, the question of acquiescence to the jury because there was no evidence
of acquiescence and the doctrine of acquiescence does not apply to the facts of
this case.  

            The trial court submitted Question 12
to the jury asking whether Stone and Seamans and their successors in title
acquiesced in a boundary line, line B, between the properties.  Line B was the
fence line that Stone and Wolf, at one time, argued was the true boundary line
between their properties and Moore’s property.  Moore objected to the
submission of this question on the grounds that there was no evidence, no
pleading, and no law to support the submission of the question.  The objection
was overruled.  The jury answered “yes” to this question.  

Standard of Review

            We use an abuse of discretion standard
to review the trial court’s submission of instructions and jury questions.  Texas Dep’t of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990); Broughton
Assocs. Joint Venture v. Boudreaux, 70 S.W.3d 324, 327 (Tex. App.—Waco
2002, no pet.).  The trial court's discretion is subject only to the
requirement that the question must control the disposition of the case, be
raised by the pleadings and the evidence, and properly submit the disputed
issues for the jury's determination.   See Harris County v. Smith, 96
S.W.3d 230, 236 (Tex. 2002); Broughton Assocs., 70 S.W.3d at 327; see
Tex. R. Civ. P. 278.  

Statutory Limitations Periods

            The 3 year limitations period statute
for adverse possession provides that a person must bring suit to recover real
property held by another in peaceable and adverse possession under title or
color of title not later than three years after the day the cause of action
accrues.  Tex. Civ. Prac. & Rem.
Code Ann. § 16.024 (Vernon 2002).  Moore contends that Stone and Wolf
did not hold the land under title or color of title.  Neither term “title” nor
“color of title” were defined for the jury.  The statue, however, defines title
as “a regular chain of transfers of real property from or under the sovereignty
of the soil.”  Id. § 16.021(4) (Vernon 2002).  Color of title is defined
by statute, for the purposes of this appeal, as a consecutive chain of
transfers to the person in possession that is not regular because of a muniment
that is not properly recorded or is only in writing or because of a similar
defect that does not want of intrinsic fairness or honesty.  Id. §
16.021(2)(A) (Vernon 2002).

            Additionally, the statute for the 5
year limitations period for adverse possession provides:

            (a)
A person must bring suit not later than five years after the day the cause of
action accrues to recover real property held in peaceable and adverse
possession by another who:

 

                        (1) cultivates, uses, or
enjoys the property;

                        (2) pays applicable taxes
on the property; and 

                        (3) claims the property
under a duly registered deed.

Tex. Civ. Prac. &
Rem. Code Ann. § 16.025 (Vernon
2002).  Moore argues that Stone and Wolf cannot claim the property under a duly
registered deed.

            Finally, the 25-year-limitations-period
statute for adverse possession, under which the jury was charged,[4] provides in relevant part:

            (a)  A person…may not maintain an
action for the recovery of real property held for 25 years before the
commencement of the action in peaceable and adverse possession by another who
holds the property in good faith and under a deed or other instrument purporting
to convey the property that is recorded in the deed records of the county where
any part of the real property is located.

 

Tex. Civ. Prac. &
Rem. Code Ann. § 16.028(a) (Vernon
2002).  Moore argues that Stone and Wolf do not hold the property under a deed
or other instrument.

 

            Applicable Facts

            Moore, Stone, and Wolf introduced
their deeds into evidence.  Each deed referenced Elm Creek as a common
boundary.  At the beginning of trial, Stone and Wolf argued that the fence line
that had been built by Stone’s father and Moore’s father was the “Elm Creek”
boundary referenced in the deeds.  Stone and Wolf designated the fence line as “line
B.”  Moore, however, argued that from her property, the actual “Elm Creek”
boundary was beyond the fence line.  She designated her “Elm Creek” boundary as
“line A.”  

            Early during the second day of trial,
after their surveyor testified regarding which line was Elm Creek, Stone and
Wolf informed the court that they were “waiving their assertion with reference
to Elm Creek.”  Out of the presence of the jury, Stone and Wolf explained to
the court that it was their intention to waive their position that line B, the
fence line, was Elm Creek.  The parties disagreed as to the significance of
that intention.  Nevertheless, with Stone’s and Wolf’s agreement, the trial
court announced to the jury that “the plaintiffs have stipulated that the
course of Little Elm or Elm or the creek is line A as asserted by the defendant
(Moore).”

            Application of Law to Facts

            In her first issue, Moore argues that
because Stone and Wolf stipulated that Elm Creek ran on her asserted boundary,
they did not prove color of title, title, or a deed as required by the 3, 5,
and 25 year limitations statutes because the disputed property was not
contained within the legal description in their deeds.  Stone and Wolf argue
that it is not necessary for their deeds to include the disputed property.  We
agree with Moore.

            The Texas Supreme Court has said,
"It is well settled that when one enters into possession of land under a
deed, his possession is referable to the deed, and it is presumed to be in
conformity with it, and is confined to the limits thereof."  Harmon v.
Overton Ref. Co., 109 S.W. 2d 457, 460, rev’d order of rendition on
rehr’g in 110 S.W. 2d 555 (Tex. 1937).  To claim adjoining land outside the
limits of the described boundaries, the possessor must have actual possession
of such additional land of such a character as of itself will give notice of an
actual adverse possession.  Southern Pine Lumber Co. v. Hart, 340 S.W.2d
775, 781 n. 2 (Tex. 1960); Osborn v. Deep Rock Oil Co., 153 Tex. 281, 267 S.W. 2d 781 (1954).  

            Thus, to have title or color of title,
the deeds of Stone and Wolf had to include the disputed property within its
descriptions.  By stipulating that the course of Elm Creek was the line
asserted by Moore, Stone and Wolf necessarily admitted that their deeds did not
include the disputed property.  There was no evidence that Stone and Wolf had
title or color of title that would allow the submission of questions to the
jury regarding the 3 year statute of limitations on adverse possession. 
Therefore, the trial court abused its discretion in submitting questions 1 and
6.  

            Likewise, for purposes of the 5 and 25
year limitations statutes that were submitted to the jury, there is no evidence
that Stone and Wolf can claim the disputed property under a duly registered
deed or a deed or other instrument purporting to convey the property.  The
trial court thus abused its discretion in submitting questions 2, 3, 7, and 8
to the jury.

            Because the trial court abused its
discretion in submitting questions 1, 2, 3, 6, 7, and 8, Moore’s first issue is
sustained.

Acquiescence 

            When a boundary line between adjoining
owners is uncertain or controverted, that boundary line may be established by
implied agreement, and if the implied agreement is disputed, acquiescence may
be shown by circumstantial evidence.  Wall v. Carrell, 894 S.W.2d 788,
797-798 (Tex. App.—Tyler 1994, writ denied); Fulford v. Heath, 212 S.W.2d
649, 654 (Tex. Civ. App.—Amarillo 1948, writ ref'd n.r.e.). The person claiming
that the common boundary was established by acquiescence must show that he has
title to the tract and that the owners of the property on both sides of the
line agreed to, acquiesced in, or recognized such line as the boundary.  Wall,
894 S.W.2d at 798; Davis v. Miers, 308 S.W.2d 277, 280 (Tex. Civ.
App.—Eastland 1957, writ ref'd n.r.e.).  In order to establish a
boundary-by-acquiescence, the agreement must stem from some initial uncertainty
or dispute over the true boundary line.  McAllister v. Samuels, 857
S.W.2d 768, 778 (Tex. App.—Houston [14th Dist.] 1993, no writ).  "The
existence of uncertainty, doubt or dispute is essential to the validity of such
[an] agreement."  Gulf Oil Corp. v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711, 714 (Tex. 1941). 

            Although acquiescence and recognition
may be evidence of an agreement fixing a boundary and may support an inference
or presumption that there has been such an agreement, this presumption will not
apply when induced by mistake, or when the true boundary is established
conclusively by undisputed evidence.  Kirby Lumber Corp. v. Lindsey, 455
S.W.2d 733 (Tex. 1970); Wall, 894 S.W.2d at 798.  Further, when there is
no doubt as to the true location of the boundary line, mere proof of
acquiescence in an erroneous line will not support a finding that such other
line is the true line.  Id.  

            Applicable Facts and Application
to Law

            The only evidence potentially relating
to the issue of acquiescence was testimony by Earl Lehrman,[5] Stone’s surveyor, and Stone.  Lehrman
stated that Seamans showed him the property and did not say anything about the
fence not being the boundary line between the properties.  The surveyor
testified that he thought the fence line was where the water course was back in
the 1960’s.  Stone testified that he saw the fence built and that Seamans said
to him “I think it’ll last us the rest of our life.”  There was no testimony as
to why the fence was built.  The testimony does not establish that the owners
of the property, Seamans and Stone’s father, were uncertain about the boundary
between their properties and recognized the fence line as the boundary.  

            Even if this testimony could support a
presumption that there could be an agreement fixing the boundary, the alleged
presumption would not apply in this case because the boundary was conclusively
established at trial.  At the beginning of the trial, the boundary line between
the property of Stone and Wolf and the property of Moore was in dispute. 
However, during trial, Stone and Wolf stipulated that the boundary line argued
by Moore to be the proper boundary line, line A, was, in fact, the true
boundary line, that being Elm Creek. Because of the stipulation, there was no
longer a dispute over the boundary line.  Thus there was no disputed issue for
the jury's determination.  Accordingly, there was no evidence of acquiescence,
and the trial court abused its discretion in submitting Question 12 to the
jury.

            Moore’s third issue is sustained.

Is the Error Reversible?

            Because we hold that the trial court's
submission of questions 1, 2, 3, 6, 7, 8, and 12 were improper, we now
determine whether the error is reversible.  Error in the charge is reversible
if, in light of the entire record, it probably caused the rendition of an
improper judgment.  Tex. R. App. P.
44.1(a)(1); Reinhart v. Young, 906 S.W.2d 471, 473 (Tex. 1995); Broughton
Assocs. Joint Venture v. Boudreaux, 70 S.W.3d 324, 327-328 (Tex. App.—Waco 2002, no pet.).

            We have determined that there was no
evidence of adverse possession under the 10 year limitations period as to Stone
and Wolf.  We have also determined that there was no evidence which would
support the submission of questions regarding the 3, 5, and 25 year limitations
periods as to Stone and Wolf, and the question of acquiescence.  There is no
other question answered by the jury which would support a judgment in favor of
Stone and Wolf.  Therefore, the error in the charge caused the rendition of an
improper judgment.  

            Because of our disposition of Moore’s first three issues, we need not discuss her fourth and fifth issues.




Conclusion

            Accordingly, we reverse the trial
court’s judgment and render judgment that Stone and Wolf take nothing on their
claims.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Reversed
and rendered

Opinion
delivered and filed April 2, 2008

[CV06]









[1] C.C.
Stone was G.Z. Stone’s father.





[2]
Seamans was Moore’s father.





[3] Any
“cultivation” by Stone that may have occurred on the disputed property occurred
long before Stone acquired title to his property.





[4]
There are two 25 year limitations period statutes.





[5]
Lehrman purchased Seaman’s property.  Moore and her sons purchased the property
from Lehrman.  Moore’s sons then deeded their interest in the property to Moore.