

NUMBER 13-09-00269-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

---

THE HEIRS OF BERRY AND SARAH SIMMONS,       Appellants,

v.

JAMES A. BOULIGNY AND LARRY
SALLEE, AS INDEPENDENT EXECUTOR
OF THE ESTATE OF ELSIE SALLEE,       Appellees.

---

On appeal from 130th District Court
of Matagorda County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides**
**Memorandum Opinion by Justice Rodriguez**

Appellants, the Heirs of Berry and Sarah Simmons, challenge the jury's verdict in

favor of appellees, James A. Bouligny and Larry Sallee (independent executor of the

Estate of Elsie Sallee), which awarded appellees title to certain land in Matagorda County

by virtue of adverse possession.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.025-.028 (Vernon 2002).  The land in question is a 100-acre tract originally purchased by Berry and Sarah Simmons in 1879 (the Simmons tract) and purportedly conveyed to and occupied by appellees since 1966.  By eight issues, which we renumber and reorganize as follows, *see* TEX. R. APP. P. 47.1, appellants argue that the trial court erred in entering judgment for appellees because: (1) appellants and appellees were co-tenants of the Simmons tract; (2) appellees were permissive users or had appellants' consent to use the Simmons tract; (3) the legal description in a certain deed is inadequate to support appellees' adverse possession claim; and the evidence presented at trial was legally and factually insufficient to support the jury's findings that (4) appellees held the Simmons tract in peaceable and adverse possession for a period of five years under a duly registered deed purporting to convey the entire Simmons tract and used, cultivated, or enjoyed the property and paid taxes on the property during such period; (5) appellees held the Simmons tract in peaceable and adverse possession for a period of ten years and used, cultivated, or enjoyed the property during such period; (6) there was a fence around the entire Simmons tract, which supported a claim of adverse possession under the ten-year statute; (7) appellees held the Simmons tract in peaceable and adverse possession for a period of twenty-five years and used, cultivated, or enjoyed the property during such period; and (8) appellees held the Simmons tract in peaceable and adverse possession for a period of twenty-five years in good faith and under a deed purporting to convey the entire Simmons tract.  We affirm.

2

## I. Background

On May 7, 2003, appellees brought suit against appellants to try title to the Simmons tract.[1]  In their petition, appellees alleged that they have occupied the Simmons tract in peaceable and adverse possession for more than thirty years and sought title to the tract under the five, ten, and twenty-five year adverse possession statutes.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.025-.028.  Citation was made by publication, and appellants answered on April 7, 2004.  The case proceeded to jury trial on May 7, 2007, from which we drew the following background facts.

It is undisputed that the Simmons tract was bought by Berry and Sarah Simmons in 1879.  The ownership and possession of the land during the roughly eighty years following the Simmonses' original purchase is not entirely clear from the record.  There was testimony at trial by certain Simmons heirs that Berry and Sarah Simmons's two sons, William and Sampson Simmons, held title to the Simmons tract until their deaths.  There was also testimony suggesting that Ira Armstead, one of the Simmonses' great-grandchildren, convinced William and/or Sampson to give him title to the Simmons tract upon their death.  The dates of William and Sampson's deaths do not appear in the record.

---

[1]By this suit, appellees sought title to a total of 200 acres of land by adverse possession.  To that end, in addition to their claim against the Simmons heirs regarding the 100-acre Simmons tract, appellees also brought claims in the same petition against defendants Mac and Marlin Milner, the Unknown Heirs of Henry Clay, and the Unknown Heirs of George Harrison to try title to two fifty-acre tracts of land, the Henry Clay fifty-acre tract and the Harrison fifty-acre tract.  Appellees' claims against the Harrison heirs were tried together with their claims against appellants.  The jury returned a verdict in favor of appellees against the Harrison heirs, granting appellees title to the Harrison tract, but the Harrison heirs did not appeal the verdict. Appellees' claim against the Milners is not before this Court.  Appellees' claim against the Clay heirs was severed from their claims against the remainder of the original defendants, and on March 26, 2009, we affirmed the summary judgment granted in favor of appellees in that severed case.  *See Henry Clay Heirs v. Bouligny*, No. 13-08-00566-CV, 2009 WL 781860, at *7 (Tex. App.–Corpus Christi Mar. 26, 2009, pet. denied).

The first attempted conveyance in the record is a 1957 warranty deed from Frank Cochran to Armstead, purporting to grant the entire Simmons tract to Armstead (the Cochran Deed).[2] In 1966, Armstead conveyed an interest in the Simmons tract to Bouligny by warranty deed; by that deed (Deed One), Armstead conveyed to Bouligny "an undivided one-half (1/2) . . . interest" in the Simmons tract. In 1967, Armstead conveyed to Bouligny *and* J.B. Sallee "an undivided twenty-five (25) acres" of the Simmons tract (Deed Two).[3] Finally, in 1968, Armstead conveyed by deed yet another interest in the Simmons tract to Bouligny and J.B. (Deed Three). The conveyance in Deed Three read that Armstead conveyed to Bouligny and J.B. "the remainder of the [Simmons tract], said interest being not less than 25 acres."[4]

The parties dispute precisely what occurred on the Simmons tract subsequent to these purported conveyances. Appellees maintained at trial that they paid all taxes owing on the tract and granted leases to various individuals to graze their cattle on the tract. Appellees also presented evidence that they built and maintained a fence around the tract,[5] built a road, cleared the land for better grazing, implemented various projects to improve drainage on the tract, and commissioned soil and seismic studies to assess the property.

---

[2]This deed is the subject of appellants' third issue. The identity of Frank Cochran and his relationship to the parties is not clear from the record.

[3]J.B. Sallee is the deceased father of appellee Larry Sallee and husband of decedent Elsie Sallee.

[4]In 1971, James Bouligny and J.B. partitioned the Simmons tract; after the partition, J.B. owned roughly the "top" half of the tract and Bouligny owned the "bottom" half.

Bouligny testified at trial that he and J.B. also acquired the fifty-acre Harrison tract directly below and adjoining the Simmons tract around the time he and J.B. acquired the Simmons tract.

[5]There was testimony at trial that Bouligny constructed and maintained a fence around the entire 200 acres to which appellees sought title by their lawsuit. Appellants dispute the nature and extent of the fencing around the 200 acres.

4

Appellees further contend that Larry has lived on the tract for over twenty years, starting in 1985, and that they arranged for certain individuals to hunt and gather pecans on the property. At trial, appellants challenged the validity and effect of the Cochran Deed and Deeds One, Two, and Three and argued that appellees' cultivation, use, and enjoyment of the Simmons tract was intermittent and did not show the sort of continuous, open, and notorious possession necessary to prove adverse possession under any of the applicable statutes.

After the close of evidence, the trial court submitted questions to the jury under all four of the adverse possession statutes as follows:

1. Do you find that [appellees] held the Simmons 100 Acre Tract in peaceable and adverse possession under a duly registered deed for a period of five years AND used, cultivated or enjoyed the property during such period and paid the applicable taxes on the property during such period?

2. Do you find that [appellees] held the Simmons 100 Acre Tract in peaceable and adverse possession for a period of 10 years, and used, cultivated or enjoyed the property during such period?

3. Do you find that [appellees] held the Simmons 100 Acre Tract in peaceable and adverse possession for a period of 25 years, and used, cultivated or enjoyed the property during such period?

4. Do you find that [appellees] held the Simmons 100 Acre Tract in peaceable and adverse possession for a period of 25 years in good faith and under a deed or other instrument purporting to convey the Simmons 100 Acre Tract that is recorded in the deed records of Matagorda County, Texas?

The jury answered "yes" to each question, and the trial court entered judgment in favor of appellees. This appeal ensued.

5

## II. CO-TENANCY

We first address appellants' co-tenancy issue because our determination of the issue will affect the standards and applicable law under which we review appellants' remaining issues. *See BP Am. Prod. Co. v. Marshall*, 288 S.W.3d 430, 459 (Tex. App.–San Antonio 2008, pet. filed) (noting that we must first determine whether the parties are co-tenants before we may determine whether possession of the property was adverse); *see also Garner v. Griffin*, No. 13-06-00621-CV, 2009 WL 200772, at *3 (Tex. App.–Corpus Christi Jan. 29, 2009, no pet.) (mem. op.) (holding that a "co-tenant may not adversely possess against another co[-]tenant unless it clearly appears he has repudiated the title of his co[-]tenant and is holding adversely to it. Notice of repudiation must be clear, unequivocal, and unmistakable."). By this issue, appellants claim that they are co-tenants with appellees in the Simmons tract. However, they provide no citation to authority or the record and offer no substantive legal analysis to support their threshold assertion that they are co-tenants with appellants. Therefore, we conclude that appellants' co-tenancy issue has been inadequately briefed. *See* TEX. R. APP. P. 38.1(i) (providing that a brief must contain "a clear and concise argument that includes appropriate citations to legal authority and to the appellate record"). Appellants' first issue is overruled.[6]

---

[6] By their second issue, appellants argue that appellees could not have proven adverse possession because they were permissive users of the Simmons tract. However, although appellants title this issue in terms of permissive use, the authority cited and contentions made relate to a co-tenant's obligation to repudiate its tenancy in order to prove adverse possession. Thus, it appears that appellants' "permissive use" issue is, in actuality, a mere extension of appellants' co-tenancy issue, and we construe it as such. *See* TEX. R. APP. P. 47.1. As discussed above, appellants provide no authority or substantive legal analysis to support their threshold assertion that they are somehow co-tenants with appellants in the Simmons tract. And given that appellants have failed to brief this initial contention, it would be inappropriate for this Court to reach appellants' arguments regarding repudiation of co-tenancy that derive from that inadequately briefed threshold assertion. *See* TEX. R. APP. P. 38.1(i); *see also Canton-Carter v. Baylor College of Med.*, 271 S.W.3d 928, 931 (Tex. App.--Houston [14th Dist.] 2008, no pet.) (holding that an appellate court should not speculate as to an appellant's argument and thus stray from its role "as a neutral adjudicator [to] become an advocate for [an appellant]"). Appellants' second issue is overruled.

### III. SUFFICIENCY OF THE EVIDENCE

By their fourth through eighth issues, appellants challenge the legal and factual sufficiency of the evidence supporting various findings of the jury.

### A. Standard of Review

We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

In reviewing an appellant's factual sufficiency challenge to an adverse jury finding on which the opposing party had the burden of proof, we will consider, weigh, and examine all of the evidence in the record, both in support of and contrary to the finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We will set aside the jury's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## B. Possession Under the Ten-Year Statute

By two issues, appellants challenge the legal and factual sufficiency of the evidence supporting the trial court's finding that appellees adversely possessed the Simmons tract under the ten-year statute. Specifically, by their fifth issue, appellants argue that the only evidence of use offered by appellees were grazing leases that appellees granted to various cattle runners and that those leases do not evidence continuous and exclusive use of the entire Simmons tract for the requisite statutory period. In further support of this issue, appellants point to testimony allegedly showing that seventy percent of the Simmons tract was not usable for grazing; appellants argue that this testimony is evidence that appellees did not show exclusive use and possession of the entire Simmons tract.[7] Additionally, by

---

[7]Appellants also argue, in support of their fifth issue, that the facts are insufficient to establish when the limitations period began to run because of a vendor's lien in Deeds Two and Three that was supposedly never released by Armstead. However, we are not persuaded by this argument because, when asserting title by adverse possession under the ten-year statute, the claimant need not rely on a deed or other instrument purporting to convey title. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.026(b) (Vernon 2002) (providing that adverse possession may be had "[w]ithout a title instrument" so long as the claimed land is less than 160 acres or, if greater than 160 acres, is enclosed); *Abraham v. Sullivan*, 103 S.W.2d 229, 231-32 (Tex. Civ. App.–Austin 1937, no writ) (stating that there is no need for a deed at all to perfect title under ten-year statute of limitations).

Under their fifth issue, appellants further contend that the actions taken by appellees did not suffice to give constructive or inferred notice to appellants that they were repudiating their co-tenancy. Having already determined that appellants inadequately briefed their co-tenancy issue, we are also unpersuaded by this argument.

8

their sixth issue, appellants contend that the fence allegedly constructed and maintained by appellees around the Simmons tract does not support adverse possession acquired by grazing.

## 1. Applicable Law

In the context of a civil jury trial, the sufficiency of the evidence is reviewed in light of the charge submitted if, as is the case here, no objection is made to the charge.[8] *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001). The jury charge in this case read, in relevant part, as follows: "Do you find that [appellees] held the Simmons 100 Acre Tract in peaceable and adverse possession for a period of 10 years, and used, cultivated or enjoyed the property during such period?" The jury was also given the following definitions:

> "Adverse Possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another person. You are further instructed that "hostile to the claim of another" means that the claim of an adverse possessor must be hostile to and inconsistent with the claim of another.
>
> . . . .
>
> "Peaceable Possession" means possession of real property that is exclusive, continuous and is not interrupted by an adverse suit to recover the property . . . .

---

[8]Appellants objected at trial to the ten-year limitations period jury charge on the basis that it failed to reference an alleged disability suffered by appellants; that objection was overruled by the trial court. However, appellants made no other objections to the ten-year charge or to any of the definitions in the jury instructions. *See* TEX. R. APP. P. 33.1(a). Moreover, appellants advance no issues regarding the jury charge on appeal. We therefore review the sufficiency of the evidence supporting the jury's answer under the ten-year statute in light of the law as set out in the jury charge. *See Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001).

9

"Actual and visible appropriation" means actual, open, notorious and visible appropriation of land sufficient to give notice to all persons who claim an interest. Notice can be actual, express notice or record notice. However, the notice need not be actual, express notice or record notice; instead, constructive notice may be presumed from the nature and extent of the acts of adverse possession such as use of the land by [appellees].

"Used, Cultivated or Enjoyed". It is not essential that all 3 be shown to prove adverse possession, only one of the 3 is required.

. . . .

"Claim of Right" means the [appellees'] intention to appropriate or claim the land as his own. A claim of right may be established by a public declaration of the claim or by open and visible acts.

## 2. Analysis

Assuming without deciding that the only evidence of use of the Simmons tract proffered by appellees related to grazing,[9] we conclude that there was sufficient evidence at trial to support the jury's findings under the ten-year statute. Grazing livestock is a permissible use the jury can consider in determining whether a claimant may acquire title to a piece of property through adverse possession. *See Doyle v. Ellis*, 549 S.W.2d 62, 64 (Tex. Civ. App.–Waco 1977, no writ). When grazing is the only claimed use of the land in question, the claimant must usually prove the tract of land was "designedly enclosed" for the grazing use. *Moore v. Stone*, 255 S.W.3d 284, 288 (Tex. App.–Waco 2008, pet. denied); *Harlow v. Giles*, 132 S.W.3d 641, 648 (Tex. App.–Eastland 2004, pet. denied). Where the fence existed before the claimant took possession and the claimant failed to demonstrate the purpose for which the fence was erected, the fence is considered a

---

[9]In actuality, appellees presented evidence of multiple uses and enjoyments of the land, including the following: (1) Larry, one of J.B.'s sons, has lived on the portion of the tract owned separately by the Sallee family from 1985 to the present; (2) the Sallee family, Bouligny, and their guests often gather pecans on the tract; and (3) Larry and guests of Larry and Bouligny regularly hunt deer and wild hog on the tract.

"casual fence" and generally does not suffice to show adverse possession. *Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex. 1990); *Moore*, 255 S.W.3d at 288. Repairing or maintaining a casual fence, even for the express purpose of keeping livestock within the enclosed area, does not change a casual fence into a designed enclosure. *Moore*, 255 S.W.3d at 288.

However, a "claimant may so change the character of a casual fence that it becomes a designed enclosure." *Rhodes*, 802 S.W.2d at 646. In fact, in some circumstances, "a showing of designed enclosure" is unnecessary where a claimant can prove "active and total use of the pasture grazing capacity to the exclusion of all others" and that its livestock was "continuously present and visible." *Butler v. De La Cruz*, 812 S.W.2d 422, 424 (Tex. App.–San Antonio 1991, writ denied). Ultimately, the nature of the fencing and its importance as evidence of adverse possession is a question for the jury, and we defer to the jury's judgment on such matters. *See Rhodes*, 802 S.W.2d at 646; *Butler*, 812 S.W.2d at 425; *Ogletree v. Evans*, 248 S.W.2d 804, 807 (Tex. Civ. App.–Beaumont 1952, writ ref'd n.r.e.) (holding that "the exclusiveness of the limitation claimant's possession is ordinarily one of fact to be determined by . . . a jury").

Here, there was evidence at trial that Bouligny and J.B. came into possession of the Simmons tract in 1969, at the latest, and that they have continually leased the property to cattle runners for grazing since that year. The record contains leases between Bouligny and various lessees from 1969 to 2002. Although the leases do not consistently and clearly cover the entire Simmons tract and do not account for every year between 1969 and 2002, the testimony at trial established that cattle have grazed on the entire Simmons

11

tract during that time period and through the present. At trial, the various lessees described their tenures on the tract. The lessees all stated that they were out on the tract monitoring and managing their cattle nearly every day; that they mowed the grass and maintained the pastures on a regular basis; that they patrolled the fence line of the property; and that no other cattle or livestock were allowed on the tract during their leases. *See Butler*, 812 S.W.2d at 424-25; *see also Temple Eastex Inc. v. Busby*, 696 S.W.2d 609, 611-12 (Tex. App.–Beaumont 1985, writ ref'd n.r.e.) (affirming adverse possession through evidence of use by claimant's lessee to run cattle and other livestock on the claimed land). The testimony at trial indicated that, although a majority of the tract is wooded or covered with thick brush, the cattle nonetheless roam over and graze the entire tract; in fact, it was noted by one lessee that the wooded areas of the tract are particularly important during the wintertime because the cattle take shelter in the brush from the cold and rain.

In addition to the evidence specifically regarding the grazing of cattle, there was also testimony that, during the time period of 1969 to the present, Bouligny has regularly paid for bulldozer work on the tract to clear brush and cultivate grass for grazing; that the piles of brush from the bulldozing were "as big as this [court]room"; that Bouligny dug a water well and pond on the tract and ran electricity to the well to provide water for the cattle; and that Bouligny has commissioned several projects on the tract to improve drainage and make the land more suitable for grazing.

Finally, there was evidence at trial concerning the fencing around the Simmons tract. Bouligny testified that the Simmons tract was completely fenced when he and J.B. bought it from Armstead. Bouligny further stated that Armstead also leased the land for

12

cattle grazing and that at the time appellees bought the tract, the fence was suitable for "turning cattle." *See Rhodes*, 802 S.W.2d at 646.

The evidence at trial indicated that after they acquired the Simmons, Harrison, and Clay tracts, appellees then re-built and maintained a fence around the entire 200 acres they claimed in this lawsuit, and the testimony established that the Simmons tract was contained within this fence. *See Temple Eastex Inc.*, 696 S.W.2d at 612 (holding that the use of a tract for grazing within fences enclosing the claimed tract and the adjoining property satisfies requirements of the ten-year statute). Larry testified that there is a fence around the "top" half of the Simmons tract that his family has possessed separately from Bouligny since 1971 and that the gate on this fence is locked unless he is at or near the property. Bouligny and other witnesses testified that, although there is no fence separating Bouligny's "bottom" half of the Simmons tract from the fifty-acre Harrison tract and fifty-acre Clay tract that were also the subject of the lawsuit, the Simmons tract is enclosed within a fence that surrounds Bouligny's "bottom" half of the Simmons tract and the Harrison and Clay fifty-acre tracts. *See id.* There was testimony at trial that all of the fencing built and maintained by appellees was meant to keep cattle in and trespassers out.

The testimony at trial also established that appellees and their lessees built and maintained three-quarters of the fence and that the neighboring property owner built and maintained the final one-quarter of the fence bordering his property. There was testimony that this sort of shared fence maintenance is standard practice in the ranching community.

Appellants contend that the fencing claimed by appellees is a casual fence and does not suffice to prove adverse possession by grazing alone. Appellants point to the fact that the neighboring property owner built and maintained one-quarter of the fence as their

13

primary support for this contention. We disagree that the fencing around the tract is a casual fence. Although Bouligny testified that the fence existed before he and J.B. took possession of the Simmons tract, he also testified that the tract was used by Armstead's lessee to graze cattle and that the existing fence was sufficient for that purpose. There was, therefore, evidence demonstrating the purpose of the existing fence, and based on our review of the record, we cannot conclude that the fence is a casual fence for purposes of determining adverse possession. *See Rhodes*, 802 S.W.2d at 646; *Moore*, 255 S.W.3d at 288.

Moreover, we do not believe that the neighboring property owner's building of one-quarter of the fence defeats appellees' claim. There was testimony at trial that sharing fencing maintenance is a standard practice in the ranching community. Furthermore, the evidence established that the persons who were the neighboring property owners during appellees' possession of the tract were also appellees' lessees at various points in time and that, as part of their obligations as lessees, they maintained the fencing surrounding the entirety of appellees' claimed property. Arguably, then, through the conduct of their lessees, appellees were maintaining the entire fence. Regardless, the importance of the fence to appellees' claims of adverse possession is ultimately a question for the jury, and we remain mindful of our duty to defer to the fact finder in its determination of such issues. *See Rhodes*, 802 S.W.2d at 646; *Butler*, 812 S.W.2d at 425; *Ogletree*, 248 S.W.2d at 807.

Finally, even if we were to assume that the fence is a casual fence, there is ample evidence that appellees so changed the character of the fence that it became a designed enclosure after their acquisition of the property. *See Rhodes*, 802 S.W.2d at 646. Additionally, the evidence established that appellees and their lessees actively and totally

14

used the pasture grazing capacity to the exclusion of all others and were a continuous and visible presence on the tract, which would negate the need for a designed enclosure. *See Butler*, 812 S.W.2d at 424.

In sum, based on the foregoing, we conclude that appellees established that they adversely and peaceably possessed the Simmons tract for a period of ten years through the grazing of cattle on the property from 1969 through the present. Under the law as set forth in the jury charge, the evidence showed that appellees actually and visibly appropriated the property under a claim of right that is inconsistent with and hostile to any claim by appellants and exclusively and continuously possessed the property for the duration of the statutory period. Viewing the evidence in the light most favorable to the verdict, we conclude that there was more than a scintilla of evidence that, for at least ten years, appellees used and cultivated the tract for grazing and constructed and maintained the requisite fencing for that purpose. *See Cazarez*, 937 S.W.2d at 450; *Doyle*, 549 S.W.2d at 64. Moreover, after examining all of the evidence, we cannot say that the jury's verdict under the ten-year statute was so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242; *Cain*, 709 S.W.2d at 176. The evidence was, therefore, legally and factually sufficient, and appellants' fifth and sixth issues are overruled.

Having determined that there was sufficient evidence to support the jury's findings of adverse possession by appellees under the ten-year statute, we need not reach appellants' fourth, seventh, and eighth issues regarding the other adverse possession statutes. *See* TEX. R. APP. P. 47.1. Further, we need not reach appellants' third issue

15

regarding the adequacy of the Cochran Deed. *See id.*; *see also Rhodes*, 802 S.W.2d at 645 (citing *Satterwhite v. Rosser*, 61 Tex. 166, 171 (1884)) (providing that adverse possession may be had under the ten-year statute by "naked possession" alone); *Abraham v. Sullivan*, 103 S.W.2d 229, 231-32 (Tex. Civ. App.–Austin 1937, no writ) (stating that there need be no deed at all for the perfecting of title under ten-year statute of limitations).

## V. CONCLUSION

The judgment of the trial court is affirmed.


NELDA V. RODRIGUEZ
Justice

Delivered and filed the
22nd day of April, 2010.

16