

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00446-CV

**JAY PARKER AND LINDSEY PARKER,**

                                                          **Appellants**

 **v.**

**GLENN WEBER,**

                                                          **Appellee**

From the 74th District Court
McLennan County, Texas
Trial Court No. 2015-2039-3

## MEMORANDUM OPINION

Glenn Weber[1] sued Jay and Lindsey Parker claiming ownership by adverse

possession of 20.62 acres to which the Parkers were record owners.  After a bench trial,

the trial court awarded Weber title to the 20 acres pursuant to the 10- and 25-year

---

[1] During the time this appeal has been pending, Glenn Weber died.  Pursuant to Rule 7.1(a) of the Texas Rules of Appellate Procedure, the appeal will remain styled as it was docketed, and the Court "will proceed to adjudicate the appeal as if all parties were alive."  TEX. R. APP. P. 7.1(a)(1).

statutory limitations provisions for adverse possession.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.026; 16.027 (West 2002).  Because there is no evidence to support Weber's claim of adverse possession, the trial court's judgment is reversed, and judgment is rendered that Weber take nothing.

**BACKGROUND**

In 2014, Jay and Lindsey Parker (collectively referred to as "Parker") purchased 102 acres from Dick Taylor.  At the same time, Taylor separately sold the 20 acres at issue to Parker.  A fence separated the 20 acres from the 102 acres.  Weber owned 560.9 acres on the north, east, and west sides of the 20 acres.  In 2015, Weber sued Parker after a clash between the parties occurred regarding Parker placing a ladder over the fence to access the 20 acres from the 102 acres and Parker's actions in clearing that fence line.

**SUFFICIENCY OF THE EVIDENCE**

The trial court issued findings of fact and conclusions of law in support of its judgment.  In nine issues on appeal, the Parkers assert there is no evidence or insufficient evidence to support the trial court's relevant findings and conclusions.

Findings of fact entered in a case tried to the court have the same force and dignity as a jury verdict.  *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).  Thus, we review findings of fact by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question.  *Id*. We review the trial court's conclusions of law de novo; that is, we review the trial court's

legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

When both legal and factual sufficiency challenges are raised on appeal, the reviewing court must first examine the legal sufficiency of the evidence. *See Glover v. Tex. Gen. Indemnity Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *Wells v. Johnson*, 443 S.W.3d 479, 492-493 (Tex. App.—Amarillo 2014, pet. denied). When reviewing a legal sufficiency challenge, we must consider the evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

In reviewing a factual sufficiency challenge, we must consider, examine, and weigh the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). In doing so, we consider and weigh all the evidence and set aside the disputed finding only if it is so contrary to the great weight and preponderance of the evidence as to be

clearly wrong and manifestly unjust. *Id*. at 407.

### *Adverse Possession*

The doctrine of adverse possession is based on statutes of limitation (three, five, ten, or twenty-five years depending on various statutory factors and conditions) for the recovery of real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021-.037 (West 2002); *see Wells v. Johnson*, 443 S.W.3d 479, 488 (Tex. App.—Amarillo 2014, pet. ref'd). It allows a person to claim title to real property presently titled in another and ultimately vests title to the property with the adverse claimant. *See* TEX. CIV. PRAC. & REM. CODE ANN § 16.030(a) (West 2002); *Session v. Woods*, 206 S.W.3d 772, 777 (Tex. App.—Texarkana 2006, pet. denied).

Adverse possession is defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is *inconsistent with* and is *hostile to* the claim of another person" throughout the statutory period. TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (West 2002) (emphasis added). *See Minh Thu Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006); *Moore v. Stone*, 255 S.W.3d 284, 288 (Tex. App.—Waco 2008, pet. denied). Exclusive possession of the land is required to support an adverse possession claim; thus, the claimant must wholly exclude the owner from the property. *Harlow v. Giles*, 132 S.W.3d 641, 646-47 (Tex. App.—Eastland 2004, pet. denied). Possession must be actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in

the occupant. *Id.* Due to the harsh nature of divesting a property owner of title otherwise rightfully held, the statutory prerequisites must be strictly complied with. *Wells*, 443 S.W.3d at 488; *see also Tran*, 213 S.W.3d at 915. Thus, one seeking to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990). And inferences are *never* indulged in the adverse claimant's favor. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985); *Moore*, 255 S.W.3d at 288.

<u>*Casual Fence v. Designed Enclosure*</u>

This case essentially turns on whether a fence around Weber's acreage, which he asserted included the 20 acres as its southern border, was a designed enclosure or a casual fence. The trial court found that the fence was a designed enclosure.

Under the applicable case law, there are two kinds of fences: "casual fences" and fences that "designedly enclose" an area. *Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex. 1990). The adverse claimant who relies upon grazing as evidence of his adverse use and enjoyment must show as part of his case that the land in dispute was designedly enclosed. *McDonnold v. Weinacht*, 465 S.W.2d 136, 142 (Tex. 1971). When the disputed tract of land has been enclosed with other land, especially when such other land is held by the claimant under deed, the enclosure is casual or incidental; and the occasional grazing of the disputed tract will not amount to such adverse and hostile possession and use as will support the statute of limitations. *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d

781, 785 (Tex. 1954). Further, if a fence existed before the claimant took possession of the land, and the claimant fails to demonstrate the purpose for which it was erected, then the fence is a "casual fence." *Rhodes*, 802 S.W.2d at 646. Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, generally does not convert a casual fence into a designed enclosure. *Rhodes*, 802 S.W.2d at 646; *McDonnold*, 465 S.W.2d at 142-43.

*—Evidence*

With this case law in mind, we turn to the evidence presented at trial. At the outset, we note that many times the testimony at trial was not clear. While our review is made more difficult due to many "here," "there," and "this" references made to exhibits by witnesses and counsel, it is clear that the 20 acres at issue was situated at the north end of the 102 acres also purchased by Parker. Weber owned almost 561 acres to the north, east, and west of the 20 acres. The boundary line between the two properties is a creek. The entire disputed 20 acres lies between that creek, which forms the west, north, and east sides of the 20 acres and the fence, which formed the south side of the 20 acres. Even a casual review of the survey introduced as Exhibit 1 (attached hereto as an appendix) would suggest that the fence location was selected due to the cost and difficulty of building a fence in and along the actual property line, the creek.

When Weber's father bought the land, and when Weber bought it from him, they both "assumed" that they were buying all the acreage "under fence" which Weber

believed would include the 20 acres. The entire acreage was used as a "brush and cow pasture" where goats and cattle grazed. The fences that encompassed the entirety of what Weber thought was his land were built in 1903. There was no testimony as to who built the fences or for what purpose the fences were built. Thus, according to case law, Weber's fence was a casual fence.

Weber claims, however, that in 1959, he "rebuilt" the fences, including the fence that separated Parker's 102 acres from the 20 acres; thus making the fence a designed enclosure. A person claiming land by adverse possession may change the character of a casual fence so much that it becomes a designed enclosure; and evidence of such a substantial modification is sufficient to support a finding of adverse possession. *Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex. 1990); *Butler v. Hanson*, 432 S.W.2d 559, (Tex. Civ. App. — El Paso), *aff'd*, 455 S.W.2d 942 (Tex. 1970). In *Butler v. Hanson*, 455 S.W.2d 942, 944-45 (Tex. 1970), the Texas Supreme Court agreed with the Court of Appeals that the fence in question was no longer a casual fence because the adverse possessor changed the character of the fence by adding a "net fence" to the existing 3-strand barbed wire so as to make a better fence to hold sheep and put in new posts in between the old posts around the entire ranch. The possessor made it "his fence." *See McDonnold v. Weinacht*, 465 S.W.2d 136, 144 (Tex. 1971).

There is no such evidence here. Although Weber testified specifically that as to the fence on the 20 acres he hired someone with an air drill to bore holes in the rock for

the fence posts and iron posts were placed in every hole, what Weber did to rebuild the entire fence on his acreage is unknown. His testimony was only that he "rebuilt" the fence. There was no testimony as to the purpose of the rebuilt fence, what the fence used to be made of, or what the remainder of the fence was rebuilt with. *See e.g. Mendoza v. Ramirez*, 336 S.W.3d 321, 329 (Tex. App.—El Paso 2010, pet. denied) (case distinguished from *Butler* where possessor only replaced barbed wires and posts of original fence and did not change the nature of the fence completely). Thus, there was no more than a scintilla of evidence to support the trial court's finding that the fence was substantially modified in such a way as to change its character from a casual fence to a designed enclosure.

Moreover, the evidence shows that the fence around Weber's land and the 20 acres was not entirely "enclosed." Again, from what we gather from the testimony, the western part of the 20 acres included a 50 or 60 foot high bluff. A creek ran at the base of the bluff. It was undisputed that the 20 acres was fenced only on its south side which bordered the 102 acres and that the fence was incomplete. It stopped at the bluff and did not follow the bluff down to the creek or connect with a fence on the other side of the creek.

The dispute was whether access to the land beyond the end of the fence could be made. Parker believed the gap in the fence from the bluff to the creek was about 30-40 feet and that cattle could squeeze through. Weber was not asked about, and thus, did not testify to, whether there was a gap in the fence or whether his livestock could access land

beyond the end of the fence. Weber's son, Christopher, agreed that the fence on the 20 acres did not go down the bluff and connect to another fence, but disagreed that the 20 acres was not enclosed by a fence. He did not explain his disagreement.

The only testimony that possibly explained why access around the end of the fence could not be made came from Travis Dechaume, a resident of Crawford who was familiar with the disputed 20 acres. Travis asserted that the bluff acted as part of the fence and that there was no need for a continued fence down the bluff because, "Cows can't fly." In some situations, a natural landscape could, along with other fencing, create a complete enclosure. In *Houston Oil Co. v. Skeeler*, the court held that "testimony clearly showed that … [a] bayou served as a complete barrier and kept livestock within or without the entire enclosure at all times, and that the bayou was of such a character as to form, together with the fences on the other three sides of the tract of land, a complete enclosure." *Houston Oil Co. v. Skeeler*, 178 S.W.2d 740, 741 (Tex. Civ. App.—Amarillo 1944, no pet). Here, however, there is no "clear testimony" that the bluff served as a "complete barrier" which kept Weber's cows and goats within the fenced acreage. First, while we agree with Travis's statement that "Cows can't fly," we cannot infer from that statement that the bluff was a complete barrier. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985) (inferences not indulged in favor of adverse possessor). Second, there was no testimony at all as to whether the goats that grazed the acreage could graze beyond the end of the fence.

Accordingly, there is no more than a scintilla of evidence, and thus no evidence, that the 20 acres, with the bluff and other fencing, was designedly enclosed as found by the trial court.

*Other Evidence of a Hostile Claim*

Without a designed enclosure, Weber would have to prove some other form of possession that was actual, visible, continuous, notorious, distinct, hostile, and unmistakable to satisfy his claim of adverse possession. *See De Las Fuentes v. McDonald*, 85 Tex. 132, 20 S.W. 43, 44 (1892) (mere occupancy of land by grazing without substantial enclosures or other permanent improvements not sufficient to support adverse possession); *Gandy v. Culpepper*, 528 S.W.2d 333, 337 (Tex. Civ. App.—Beaumont 1975, no pet.) (same).

*—Continual Grazing*

The trial court found Weber continuously used the 20 acres for grazing. Evidence showed he ran approximately 60 head of cows on the entire acreage, one cow per ten acres. There was no testimony as to how often the cows could or did graze on the 20 acres. Also, there was no testimony as to how many goats grazed the entire acreage or the 20 acres. That Weber's cows and goats may have crossed onto the 20 acres to graze is no evidence of adverse possession. *See Harmon v. Overton Refining Co.*, 109 S.W.2d 457, *on rehearing*, 110 S.W.2d 555 (1937) (when livestock come from an adjoining tract owned by the owner of the animals, their crossing the boundary is not itself notice of a hostile

claim). Thus, there is no evidence to support the trial court's finding of continuous grazing of the 20 acres.

*—Casual Use*

The trial court found that Weber used the 20 acres in such a way that would notify the record owner that a hostile claim was being asserted. Weber contended he cut brush off the land. Christopher asserted that he rode horses with Weber and spent summers in the creek as a child, and generally asserted that he enjoyed nature, cut small cedar, cleared the land, and "maintained" the land. However, casual activities such as these do not constitute adverse possession. *See Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (grazing, selective clearing); *McDonnold v. Weinacht*, 465 S.W.2d 136, 144 (Tex. 1971) (grazing, cutting and gathering natural crop, cutting weeds); *Stevens v. Pedregon*, 106 Tex. 576, 579 (Tex. 1915) (sporadic cultivation); *Mendoza v. Ramirez*, 336 S.W.3d 321, 329 (Tex. App.—El Paso 2010, pet. denied) (grazing, family gatherings); *King Ranch, Inc. v. Garcia*, No. 04-13-00605-CV, 2014 Tex. App. LEXIS 10395, *16 (Tex. App.—San Antonio Sept. 17, 2014, pet. denied) (mem. op.) (family gatherings, grazed cattle, hunted, and occasionally grew crops); *Moore v. Stone*, 255 S.W.3d 284, 288-89 (Tex. App.—Waco 2008, pet. denied) (grazing, cutting and gathering natural crop, sporadic cultivation); *Harlow v. Giles*, 132 S.W.3d 641, 648 (Tex. App.—Eastland 2004, pet. denied) (grazing, occasional hunting, including construction of deer blinds and deer feeders). Thus, the testimony presents nothing more than a casual use of the 20 acres which is no evidence to support the trial

court's finding of a hostile claim by Weber.

—*Built and Maintained Roads*

The trial court also found that Weber constructed and maintained roads on the 20 acres. One of the roads on the 20 acres was an old public wagon road that was established in 1903 as a means to travel to Crawford. There was no evidence that Weber constructed or maintained that particular road. The use of a roadway that the claimant did not build is no evidence of adverse possession. *See Minh Thu Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006). Another road was built from the bluff down to the creek by Eugene Dechaume. Eugene did not testify. Christopher said the road was built for Weber 15-20 years ago. Weber only stated that "Dechaume built the road off the bluff." Weber did not say that he had Dechaume build the road. Further, there was no testimony as to how that road was "built," what it was made of, whether it continued to be used, what its current condition was, or whether it was "maintained" by Weber. In other words, there was no testimony regarding its permanency, and we cannot infer that it was such a permanent improvement as to support a claim of adverse possession. *See De Las Fuentes v. McDonald*, 85 Tex. 132, 20 S.W. 43, 44 (1892) (permanent improvement); *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985) (inferences not indulged in favor of adverse possessor). Thus, there is no more than a scintilla of evidence to support the trial court's finding that Weber built and maintained roads on the 20 acres.

CONCLUSION

After reviewing the record under the appropriate standards, we find there is no evidence that Weber's fence was a designed enclosure, that Weber made substantial modifications that changed the nature of the fence from a casual fence to a designed enclosure, that Weber made use of the 20 acres in such a way that would notify Parker of Weber's hostile claim, or that Weber built and maintained roads on the 20 acres. Thus, the evidence is legally insufficient to show an actual, visible, hostile use of the 20 acres, and the trial court erred in entering a judgment for Weber pursuant to the 10- and 25-year statutes of limitation.[2]

Parker's issues are sustained; the trial court's judgment is reversed; and judgment is rendered that Weber take nothing.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Reversed and rendered
Opinion delivered and filed May 16, 2018
[CV06]



---

[2] Because of this determination, we need not discuss the trial court's remaining findings or conclusions. But if we are in error as to there being legally insufficient evidence, we are obviously of the view that the evidence is factually insufficient as well.

# APPENDIX

